STAR ENTERPRISE, Texaco Refining & Marketing (East), Inc., and Saudi Refining, Inc., Appellants,

v.

Mary Ann MARZE, individually, and as surviving widow of, community survivor of, and personal representative of Windel B. Marze, Lori Ann Marze and Scott Windel Marze, surviving children, and Pacific Employer's Insurance, Appellees.

No. 04–00–00433–CV.

Court of Appeals of Texas, San Antonio.

April 30, 2001.

Rehearing Overruled Aug. 6, 2001.

---

G. Luke Ashley, Greg W. Curry, Kristin H. O'Neal, Thompson & Knight, L.L.P., Dallas, MaryAnn "George" Bailey, Thornton, Summers, Biechlin, Dunham & Brown, L.C., San Antonio, for appellants.

Jacqueline M. Stroh, Wallace B. Jefferson, Crofts & Callaway, P.C., San Antonio, Gary G. Green, Martinez & Green, L.L.P., Houston, Rex L. Easley, Jr., Cole, Cole & Easley, P.C., Victoria, for appellees.

Sitting: ALMA L. LÓPEZ, PAUL W. GREEN and KAREN ANGELINI, Justices.

Opinion by ALMA L. LÓPEZ, Justice.

This appeal arises from a survival and wrongful death action against Star Enterprise, Texaco Refining & Marketing (East), Inc., and Saudi Refining, Inc. ("Star Enterprise") based on a premises liability theory. Star Enterprise appeals the trial court's judgment in favor of Mary Ann Marze, individually, and as surviving widow of, community survivor of, and personal representative of Windel B. Marze, Lori Ann Marze and Scott Windel Marze, surviving children, and Pacific Employer's Insurance ("the Marzes"). We affirm the judgment of the trial court.

### Factual and Procedural Background

Windel B. Marze was employed with Quality Service Tank Lines, Inc. and Trimac Transportation Services, Inc. as a truck driver. On July 9, 1994, Mr. Marze attempted to get his truck weighed at the truck scales at Texaco Food Mart, formerly known as the Texaco Gas and Eat Truck Stop, located on Interstate Highway 35 ("IH 35") in San Antonio, Texas. In order to use the intercom to communicate with the person performing the weight measurement, Mr. Marze was required to exit his vehicle and walk along a long beam that was approximately two feet tall and ten inches wide. While attempting to walk on the beam to reach the intercom, Mr. Marze slipped and fell, injuring his right knee. Mr. Marze reported his injury and the incident to his manager, William Weaver, and Mr. Weaver prepared a report. On November 16, 1994, Mr. Marze underwent surgery on his right knee to repair a ruptured anterior cruciate ligament ("ACL"). Following surgery, Mr. Marze developed a postoperative infection in his right knee. There were several attempts to control the infection, including several surgeries.

On June 10, 1996, Mr. Marze brought a premises liability suit against Star Enterprise. Mr. Marze was admitted to the emergency room on November 21, 1997 and underwent an above-the-knee amputation of his right leg to try and stop the infection. Because the infection had spread throughout his entire body, Mr. Marze died from septic shock the next day, on November 22, 1997. On December 20, 1999, Mr. Marze's wife, Mary Ann Marze, and his children, Lori Ann Marze and Scott Windel Marze, maintained a premises liability suit under the Texas Survival Statute and amended the petition to include a wrongful death claim under the Texas Wrongful Death Act, alleging that Mr. Marze died as a result of the injuries suffered in this accident. Pacific Employer's Insurance, a worker's compensation carrier, intervened in the litigation to assert a lien on the Marzes' recovery. The trial began on January 24, 2000, and on February 2, 2000, the jury returned a verdict in favor of the Marzes and awarded

the Marzes over $1.6 million in damages. On February 17, 2000, the Marzes moved for Judgment on the Verdict. On March 6, 2000, Star Enterprise moved for Judgment Notwithstanding the Verdict, but the trial court rendered judgment on the verdict on April 19, 2000.

On appeal, Star Enterprise complains: (1) that the trial court erred in submitting the charge to the jury; (2) that the trial court erred in excluding rebuttal testimony and that exclusion was harmful; and (3) that the evidence was legally and factually insufficient to support the jury's verdict.

## JURY CHARGE ERROR

In its first issue, Star Enterprise complains that the trial court erred in submitting the charge to the jury because the charge erroneously omitted an element of the Marzes claim under the Texas Wrongful Death Act. Question one (1) of the jury charge asks:

Did the negligence, if any, of those named below proximately cause the occurrence in question?

"Negligence" with respect to Windel B. Marze means failure to use ordinary care; that is failing to do that which a person of ordinary prudence would have done under the same or similar circumstances, or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

With respect to the condition of the premises, Star Enterprise was negligent if—

a. the condition posed an unreasonable risk of harm, and

b. Star Enterprise knew or reasonably should have known of the unreasonable risk of harm, and

c. Star Enterprise failed to exercise ordinary care to protect Plaintiff from the unreasonable risk of harm, by both failing to adequately warn Plaintiff of the condition and failing to make that condition reasonably safe.

"Ordinary care" with respect to Windel B. Marze means that degree of care which would be used by a person of ordinary prudence under the same or similar circumstances.

"Ordinary care" when used with respect to the conduct of Star Enterprise as an owner or occupier of a premises, means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.

"Proximate cause" means that cause which, in a natural and continuous sequence, produces an event, and without cause such event would not have occurred. In order to be proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event. The jury answered "Yes" to Star Enterprise and "Yes" to Windel B. Marze.

Question two (2) of the jury charge asks: "What percentage of the negligence that caused the occurrence do you find to be attributable to each of those found by you, in your answer to Question No. 1, to have been negligent?" In answering question two (2) of the charge, the jury found that Star Enterprise was 50% negligent and Windel B. Marze was 50% negligent.

Question three (3) of the jury charge asks: "What sum of money, if paid now in cash, would fairly and reasonably compensate Mary Ann Marze, Scott Windel Marze, and Lori Ann Marze for their damages, if any, resulting from the death of Windel B. Marze?" The charge instructed

the jury on the elements of damages and defined "pecuniary loss," "loss of companionship and society," and "mental anguish." The jury then awarded damages to Mary Ann Marze in the amount of $504,703, Scott Windel Marze in the amount of $252, 351, and Lori Ann Marze in the amount of $252,351.

Question four (4) of the jury charge asks: "What sum of money would fairly and reasonably compensate Windel B. Marze for his injuries, if any, that resulted from the occurrence in question?" The jury awarded damages to the estate of Windel B. Marze in the amount of $1,236,167.43.

### A. Standard of Review

In reviewing a trial court's submission of jury questions, appellate courts employ an abuse of discretion standard. See Tex.R. Civ. P. 277; Texas Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex.1990); Green Tree Acceptance, Inc. v. Combs, 745 S.W.2d 87, 89 (Tex.App.—San Antonio 1988, writ denied). A trial court abuses its discretion if its action is arbitrary, unreasonable, and without reference to any guiding rules and principles. See Goode v. Shoukfeh, 943 S.W.2d 441, 446 (Tex.1997). An abuse of discretion occurs when the trial court fails to analyze or apply the law correctly. See McDaniel v. Yarbrough, 898 S.W.2d 251, 253 (Tex. 1995). A trial judge must submit requested questions to the jury if the pleadings and evidence support them. See Tex.R. Civ. P. 278; Hyundai Motor Co. v. Rodriguez, 995 S.W.2d 661, 663 (Tex.1999).

For the appellate court to reverse on a jury charge error, the appellant must show harmful error. See Boatland of Houston, Inc. v. Bailey, 609 S.W.2d 743, 749–50 (Tex.1980). Error in the jury charge is reversible only if it probably caused the rendition of an improper judg-ment or probably prevented the appellant from properly presenting the case on appeal. See Tex.R.App. P. 44.1(a); Timberwalk Apts., Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex.1998). To determine whether an alleged error in the charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. See Timberwalk Apts., 972 S.W.2d at 756; Island Recreational Dev. Corp. v. Republic of Texas Sav. Ass'n, 710 S.W.2d 551, 555 (Tex.1986). When error in the charge relates to a contested issue in the case, the erroneous instruction will probably be considered reversible error. See Timberwalk Apts., 972 S.W.2d at 756. Accordingly, we must first determine whether there is error in the jury charge, and if there is error, we must then determine whether the error was harmful.

### B. Discussion

Star Enterprise contends that the trial court erred in submitting the charge to the jury because: (1) the charge only asked whose negligence, if any, proximately caused the occurrence in question, instead of whose negligence, if any, proximately caused the death of Windel B. Marze; and (2) the liability question was inadequate because the trial court failed to recognize the difference between the liability findings required to recover survival damages and the liability findings required to recover wrongful death damages. Star Enterprise argues that the trial court improperly commented on the weight of the evidence when it assumed in question three (3) of the jury charge that the occurrence in question caused Mr. Marze's death. As a result, Star Enterprise argues that the trial court's charge erroneously omitted an element of the Marzes claim under the Texas Wrongful Death Act.

■ Victims of negligence have a common-law right to sue for their injuries. *See Diaz v. Westphal,* 941 S.W.2d 96, 98 (Tex.1997). In contrast, survival and wrongful death claims are statutory in nature. *See Diaz,* 941 S.W.2d at 98; *Russell v. Ingersoll–Rand Co.,* 841 S.W.2d 343, 345 (Tex.1992). The Texas Survival Statute allows the decedent's heirs, legal representatives, and estate to bring suit for personal injuries the decedent suffered before his death. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.021 (Vernon 1997); *Diaz,* 941 S.W.2d at 98.[1] On the other hand, the Texas Wrongful Death Act confers a cause of action upon the surviving spouse, children, and parents of a decedent for damages the decedent may have recovered if he had lived. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 71.004 (Vernon 1997); *Diaz,* 941 S.W.2d at 98.[2] The statute provides that liability is based on "an injury that causes an individual's death." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 71.002 (Vernon 1997). In wrongful death actions, the negligent conduct complained of must bring about the result, that is, the death of the person through which those statutorily defined beneficiaries may seek redress. *See Parrott v. Caskey,* 873 S.W.2d 142, 149 (Tex. App.—Beaumont 1994, no writ). In other words, the Wrongful Death Act bars recovery unless Star Enterprise's actions or inactions were the proximate cause of Mr. Marze's death.

The Supreme Court, by rule and opinions, commands the trial court to use broad-form submissions whenever feasible. *See* TEX.R. CIV. P. 277; *Hyundai Motor Co.,* 995 S.W.2d at 663–64; *Plainsman Trading Co. v. Crews,* 898 S.W.2d 786, 790 (Tex.1995); *Keetch v. Kroger,* 845 S.W.2d 262, 266 (Tex.1992). Rule 277 of the Texas Rules of Civil Procedure provides: "In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions." TEX.R. CIV. P. 277. A single question may relate to multiple legal theories. *See Hyundai Motor Co.,* 995 S.W.2d at 664. Indeed, submission of a single question relating to multiple theories may be necessary to avoid the risk that the jury will become confused and answer questions inconsistently. *See id.*

■ Although we adhere to the principles of broad-form submission, Rule 277 is not absolute; rather, it mandates broad-form submission whenever feasible. *See Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 390 (Tex.2000); *Westgate, Ltd. v. State,* 843 S.W.2d 448, 455 n. 6 (Tex. 1992). Broad-form is not always feasible when the law on a liability issue is unsettled. *See Westgate,* 843 S.W.2d at 455. When the trial court is unsure whether it should submit a particular theory of liabili-

---

1. The Texas Survival Statute provides the following:

 (a) A cause of action for personal injury to the health, reputation, or person of an injured person does not abate because of the death of the injured person or because of the death of a person liable for the injury.

 (b) A personal injury action survives to and in favor of the heirs, legal representatives, and estate of the injured person. The action survives against the liable person and the person's legal representatives.

 TEX. CIV. PRAC. & REM.CODE ANN. § 71.021 (Vernon 1997).

2. The Wrongful Death Act provides the following:

 (a) An action for actual damages arising from an injury that causes an individual's death may be brought if liability exists under this section.

 (b) A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default.

 TEX. CIV. PRAC. & REM.CODE ANN. § 71.002 (Vernon 1997).

ty, separating liability theories best serves the policy of judicial economy underlying Rule 277 by avoiding the need for a new trial when the basis for liability cannot be determined. *See Crown Life,* 22 S.W.3d at 390. Rule 277 mandates that "[t]he court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277. This mandate implicitly requires the jury to be able to base its verdict on legally valid questions and instructions. *See Crown Life,* 22 S.W.3d at 390. Thus, it may not be feasible to submit a broad-form liability question that incorporates wholly separate theories of liability. *See id.* The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely. *See Hyundai Motor,* 995 S.W.2d at 664. Toward that end, the trial court is accorded broad discretion so long as the charge is legally correct. *See id.*

■■■ In the instant case, there was only one theory of liability; namely, premises liability. The trial court followed the Texas Pattern Jury Charge ("PJC") instructions for premises liability cases when plaintiff is an invitee and the requested survival and wrongful death damages. *See* STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES MALPRACTICE, PREMISES, PRODUCTS PJC 66.3, 81.2, 81.3 (1998). The trial court properly set out the elements of premises liability when the plaintiff is an invitee in the charge. *See Keetch v. Kroger,* 845 S.W.2d 262, 264 (Tex.1992). In order to determine whether the trial court erred in submitting the jury charge, we must determine whether the charge required an additional finding that the fall or the injuries sustained in the fall caused Mr. Marze's death.

The Marzes argue that the trial court submitted the premises liability and the survival and wrongful death damages questions in the proper form and obtained all of the requisite findings for recovery. The Marzes claimed in both their pleadings and in the evidence offered at trial that the actions or inactions of Star Enterprise proximately caused the death of Mr. Marze. In their pleadings, the Marzes alleged that the negligence of Star Enterprise proximately caused the death of Mr. Marze and that Mr. Marze died as a result of the injuries suffered in the accident on July 9, 1994. The Marzes also pled that "Defendants, acting through their agents, servants and employees, in the course and scope of their employment, were guilty of acts of negligence, each of which jointly and severally proximately caused the fatal injuries of Windel B. Marze and the damages suffered by the Plaintiffs." Moreover, the evidence offered at trial showed a causal link between Mr. Marze's injury that occurred on July 9, 1994 and his death on November 22, 1997; specifically, that Mr. Marze was injured, that his injured knee required surgery, that the surgery caused an infection, and that the infection resulted in Mr. Marze's death.

Star Enterprise argues that the evidence raised fact issues about what injuries were caused by the fall and about what caused Mr. Marze's death, specifically: (1) Dr. Peña testified that Mr. Marze's ACL appeared normal to him during the July 13, 1994 arthoscopic surgery and the September 1994 MRI; (2) Mr. Marze took a syringe and drained his own knee; and (3) Dr. Lee testified that the July 1994 fall did not cause Mr. Marze's death. Star Enterprise argues that from this evidence, the jury might have found that Mr. Marze's death was not caused by injuries resulting from the negligence of Star Enterprise. These arguments, however, are merely speculative considering Dr. Peña also testified that he initially missed the ACL injury and later discovered that the

ACL had been injured and torn off the femur itself. In addition, Dr. Peña testified that the infection occurred in the knee before Mr. Marze self-aspirated and that Mr. Marze did not cause the infection by draining his knee. Moreover, Dr. Lee's opinion that the July 1994 fall did not cause Mr. Marze's death has no basis and is merely speculative. Most of Dr. Lee's opinion was stricken from the record because it was unreliable. As a result, Star Enterprise offered no controverting evidence that Mr. Marze's death was caused by something other than his injury on July 9, 1994.

 Although an ultimate fact may be proven by circumstantial evidence, such a finding must be based on inferences fairly drawn from the facts in evidence and not on surmise or speculation. *See Briones v. Levine's Dept. Store, Inc.,* 446 S.W.2d 7, 10 (Tex.1969); *Prieto v. Val Verde Memorial Hosp.,* 747 S.W.2d 487, 490 (Tex.App.—San Antonio 1988, no writ). A fact issue that is established with uncontroverted evidence and is not in dispute should not be submitted to the jury. *See T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 223 (Tex.1992). In other words, if an issue is conclusively established as a matter of law, the question should not be submitted to the jury. *See T.O. Stanley Boot Co.,* 847 S.W.2d at 222–23; *Disbrow v. Healey,* 982 S.W.2d 189, 192 (Tex.App.—Houston [1st Dist.] 1998, no writ). In this case, the causal link between Mr. Marze's injury that occurred on July 9, 1994 and his death on November 22, 1997 is uncontroverted, and therefore, established as a matter of law. As a result, the "occurrence in question" and the "death of Windel B. Marze" have virtually the same meaning.

 Because the controlling issues of whether Star Enterprise "proximately caused the occurrence in question" and whether Star Enterprise "proximately caused the death of Windel B. Marze" are functionally identical in this case, the trial court was not required to submit Star Enterprise's requested question and instruction. Rather, to avoid confusing the jury and the possibility of inconsistent findings, the trial court properly refused the requested question and instruction. *See Hyundai Motor,* 995 S.W.2d at 665. This is true even though the language of the refused question and instruction was different than that of the question and instruction submitted. *See id.* While trial courts should obtain fact findings on all theories pleaded and supported by evidence, a trial court is not required to, and should not, confuse the jury by submitting differently worded questions that call for the same factual finding. *See id.* at 665–66. As a result, the charge contained no error. Because the trial court did not abuse its discretion in submitting the charge to the jury, we overrule this issue.

## EVIDENTIARY ERROR

In its second issue, Star Enterprise complains that the trial court erred in excluding rebuttal testimony. Specifically, Star Enterprise contends it was harmful error for the trial court to exclude Dr. Lee's testimony to rebut Dr. Peña's testimony about possible causes of Mr. Marze's infection.

### A. Standard of Review

 The admission or exclusion of evidence is a matter within the trial court's discretion. *See City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *See id.* at 753–54. In determining if the excluded evidence probably resulted in the

rendition of an improper judgment, a court must review the entire record. *See McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex.1992); *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex.1989). This court ordinarily will not reverse a judgment for erroneous rulings on admissibility of evidence when the evidence in question is cumulative and not controlling on a material issue dispositive to the case. *See Gee*, 765 S.W.2d at 396. To obtain a reversal of a judgment based on error in the exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error was calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex.R.App. P. 44.1; *Alvarado*, 897 S.W.2d at 753; *McCraw*, 828 S.W.2d at 757.

B. *Discussion*

 Star Enterprise argues that the trial court abused its discretion in excluding Dr. Dennis Lee's testimony about the possible causes of the infection that resulted in Mr. Marze's death. In response, the Marzes contend that the trial court properly excluded portions of Dr. Lee's testimony because Dr. Lee's testimony regarding causes of Mr. Marze's death was scientifically unreliable. *See E.I. du Pont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 549, 554–56 (Tex.1995); Tex.R. Evid. 702. We agree. There are many factors that a trial court may consider in making the threshold determination of admissibility of scientific knowledge under Rule 702 of the Texas Rules of Evidence. *See Robinson*, 923 S.W.2d at 557. These factors include, but are not limited to: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *See id.* The trial court's role is to make the initial determination whether the expert's opinion is relevant and whether the methods and research upon which it is based are reliable. *See id.* at 558.

The excluded evidence in this case shows that Dr. Lee was board certified in orthopedic surgery only. Dr. Lee had no special training in internal medicine or infectious diseases. Dr. Lee had never submitted any article for peer review regarding infectious diseases. Nevertheless, Dr. Lee was prepared to offer opinions on the source of Mr. Marze's knee infection. Furthermore, Dr. Lee was unable to provide support for his intended testimony about causation with respect to Mr. Marze's knee infection. The only medical records involving Mr. Marze that Dr. Lee had committed to memory were from the first visit Mr. Marze had with Dr. Peña. Yet, Dr. Lee was prepared to testify regarding the cause of Mr. Marze's infection. When asked about the time frame of infections and what infectious agents existed, Dr. Lee responded that he did not know because he did not "cross-date cultures to that time frame." Dr. Lee acknowledged that he could not say where the initial knee infection had arisen and had no information to support any speculation whether Mr. Marze had a preexisting infection in his body prior to his knee infection. Dr. Lee was unable to testify regarding the percentage of time Mr. Marze had an open wound or when Mr. Marze was suffering with osteomyelitis. Dr. Lee had not seen the autopsy report and did not know what had been reported as Mr. Marze's cause of death. Dr. Lee never examined Mr. Marze and said he had no opinion about

the cause of Mr. Marze's death. Yet, Dr. Lee still opined that the death did not occur because of the fall.

After reviewing Dr. Lee's testimony, we find that the trial court properly excluded his testimony because it was speculative and scientifically unreliable. Expert testimony cannot be based upon mere guess or speculation, but must have a proper factual basis. *See Ochs v. Martinez,* 789 S.W.2d 949, 958 (Tex.App.—San Antonio 1990, writ denied). Scientific evidence which is not grounded in the methods and procedures of science is no more than subjective belief or unsupported speculation. *See Robinson,* 923 S.W.2d at 557. Opinions which are purely speculative or conjectural in their nature should be excluded. *See Naegeli Transp. v. Gulf Electroquip, Inc.,* 853 S.W.2d 737, 741 (Tex. App.—Houston [14th Dist.] 1993, writ denied). In addition, unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under Rule 702. *See Robinson,* 923 S.W.2d at 557. As a result, the trial court did not err in excluding Dr. Lee's testimony. Because the trial court did not abuse its discretion, we overrule this issue.

### LEGAL AND FACTUAL SUFFICIENCY

In its third issue, Star Enterprise complains that the evidence is legally and factually insufficient to support the jury's verdict. Specifically, Star Enterprise contends that the Marzes failed to prove the elements of premises liability: (1) that any condition on the premises posed an unreasonable risk of harm; (2) that Star Enterprise had actual or constructive knowledge of that unreasonable risk; and (3) that Star Enterprise's negligence proximately caused Mr. Marze's injury.

### A. *Applicable Law*

When the injured party is an invitee, as Mr. Marze was, the elements of a premises liability claim are: (1) actual or constructive knowledge of a condition on the premises by the owner or occupier; (2) that the condition posed an unreasonable risk of harm; (3) that the owner or occupier did not exercise reasonable care to reduce or eliminate the risk; and (4) that the owner or occupier's failure to use such care proximately caused the plaintiff's injury. *See CMH Homes, Inc. v. Daenen,* 15 S.W.3d 97, 99–100 (Tex.2000); *Wal-Mart Stores, Inc. v. Gonzalez,* 968 S.W.2d 934, 936 (Tex.1998); *Motel 6 G.P., Inc. v. Lopez,* 929 S.W.2d 1, 3 (Tex.1996); *Keetch v. Kroger Co.,* 845 S.W.2d 262, 264 (Tex. 1992).

### B. *Standard of Review*

Challenges to the legal sufficiency of the evidence must be sustained when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla of evidence; or (4) the evidence established conclusively the opposite of a vital fact. *See Merrell Dow Pharmaceuticals, Inc. v. Havner,* 953 S.W.2d 706, 711 (Tex. 1997). In reviewing legal sufficiency, we are required to determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *See Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994).

If a party is attacking the legal sufficiency of an adverse finding of an issue on which it did not have the burden of proof, the attacking party must demonstrate on appeal that there is no evidence to support the adverse finding. *See Croucher v. Croucher,* 660 S.W.2d 55, 58

(Tex.1983). In reviewing a no-evidence issue, we must consider all of the record evidence in the light most favorable to the party in whose favor the verdict has been rendered and indulge every reasonable inference deducible from the evidence in that party's favor. *See Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex.1998).

When reviewing a challenge to the factual sufficiency of the evidence, we must consider all of the evidence in the record. *See Plas–Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). If a party is attacking the factual sufficiency of an adverse finding on an issue to which the other party has the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *See Hickey v. Couchman*, 797 S.W.2d 103, 109 (Tex. App.—Corpus Christi 1990, writ denied). In reviewing an insufficiency of the evidence challenge, we must first consider, weigh, and examine all of the evidence which supports and which is contrary to the jury's determination. *See Plas–Tex*, 772 S.W.2d at 445. We should set aside the verdict only if the evidence which supports the jury's finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

## C. Discussion

We now examine the record to determine whether the evidence is legally and factually sufficient to support the jury's finding. The evidence shows that on July 9, 1994, Mr. Marze attempted to get his truck weighed at the truck scales at the Texaco Food Mart located on IH 35 in San Antonio, Texas, a truck stop owned by Star Enterprise. In order to use the intercom to communicate with the person performing the weight measurement, Mr. Marze was required to exit his vehicle and walk along a long beam that was approximately two feet tall and ten inches wide. While attempting to walk on the beam to reach the intercom, Mr. Marze slipped and fell, injuring his right knee.

The evidence shows that drivers were required to use the intercom to communicate with the individual inside the store conducting the weighing. The drivers could not talk via the intercom without pushing a button on the intercom. The intercom was located several feet away from the scale itself and required truck drivers to exit their vehicles in order to use it. Cathy Taber, an employee of Star Enterprise at the truck stop in July 1994, testified that individuals had fallen off of the rail before and explained that the rail should have been wider. Taber witnessed truck drivers exiting their vehicles and walking the rail to reach the intercom. Ronald Miller, the manager of the truck stop at the time of Mr. Marze's fall, acknowledged that he saw truck drivers park their trucks on the scale and use the rail to walk to the intercom.

Leon Tullos, an expert witness with respect to industrial scales, criticized the placement of the scale with respect to the intercom. Specifically, the layout did not allow a driver to talk via the intercom while his truck was being weighed. The scale itself was ten feet wide from rail to rail, and a typical tractor trailer measures eight feet across, leaving approximately one foot on either side of the trailer to walk. Once a truck was stopped on the scale to be weighed, the driver's window would measure anywhere from 15 to 25 feet from the intercom, and the truck engine would make it difficult, if not impossible, for the driver to hear anyone speaking over the intercom. The truck driver, in order to reach the intercom, must get out of the truck and either walk down the rail

or walk along side the truck, if there remains room enough to do so. The rail itself, rather than being smooth, has a weld and is beveled toward the side of the scale, was not manufactured to use for walking, and measures approximately 2½ feet from the ground on the other side of the scale. Tullos testified that he had never before seen an intercom speaker so physically distant from the scale and had no idea what purpose such placement would serve. According to Tullos, Star Enterprise, the premises owner, had the ultimate say as to where an intercom system and scale was installed on their property.

Douglas Thomas, a truck driver for Trimac Quality Service, testified that he drove the same type of truck as Mr. Marze and that he had also weighed at the Star Enterprise truck stop. Thomas testified that when he weighed his truck at that scale, he had to get out of the truck and use the rail to walk due to the narrowness of the scale and that it was dangerous. Thomas explained that there were no steps and no handrails on the side of the rail. Thomas testified that a couple of times he almost lost his balance. He had seen other truck drivers weigh at this scale, and they too, had gotten out of their truck and walked the rail. He also explained that a person could not simply step to the other side of the rail because it was too high.

The evidence shows that Mr. Marze reported his injury and the incident to his manager, William Weaver, and Weaver prepared a report. Weaver testified that he traveled to the truck stop as part of his investigation and noticed that a truck driver would have to exit his truck and walk toward the intercom in order to use the intercom. The surface of the rail, as he measured it, was ten inches. Weaver also testified that it was difficult to exit a tractor trailer because the platform scale does not allow the driver to step down onto the ground.

Bruce Chappell, a safety consultant, testified that the ground sloped toward the scale exit and that the distance from the rail to the ground varies from 24½ to 34½ inches. The Occupational Safety and Health Administration ("OSHA") regulations required a premises owner to have steps where there is a drop of 19 inches. Chappell recommended moving the intercom so that the truck drivers would not have to get out of their trucks. Chappell testified that the primary hazard resulting from a trucker's use of the scale at the Star Enterprise truck stop is trips and falls, and in his opinion, the availability of a step would have made a lot of difference.

Waymon Johnston, Ph.D., an engineering consultant for Star Enterprise, testified that the floor of the scale was made from anti-skid material. By using this material, the designer and manufacturer intended for people using the scale to walk on the floor of the scale instead of the rail. Johnston testified that in his opinion, the scale in question did not pose an unreasonable risk of injury to individuals that would be using that scale. In addition, Johnston testified that the location of the intercom at this particular scale did not pose an unreasonable risk of harm. The most common injury to truckers are slips, falls, and back injuries due to getting in and out of their trucks.

Ursela Hernandez, a sales clerk at the truck stop, testified that from the time she began working at the Texaco station until July 9, 1994, no one had ever complained of being injured in any way while using the scale. Hernandez observed that tractor trailers have hit the rail and have been knocked out of calibration. Every once in a while, a tractor trailer had blown out its tires.

In addition to the evidence regarding the scale, the evidence also shows that on November 16, 1994, Mr. Marze underwent surgery to repair a ruptured ACL on his right knee. Following surgery, Mr. Marze developed a postoperative infection in his right knee. There were several attempts to control the infection, including several surgeries. Mr. Marze was admitted into the emergency room because he had septic shock. In an effort to control the infection, Mr. Marze ultimately underwent an above-the-knee amputation of his right leg on November 21, 1997 and died from septic shock on November 22, 1997.

Dr. Rudolph Peña, Mr. Marze's orthopedic surgeon, testified about Mr. Marze's treatment of his knee and the following surgeries that were required to fight the infection. Dr. Peña testified that he first saw Mr. Marze on July 11, 1994 and performed arthoscopic surgery on Mr. Marze's knee on July 13, 1994. According to Dr. Peña, Mr. Marze had torn the medial meniscus ligament and the medial condyle ligament in his knee. Later, Dr. Peña discovered that the ACL had been injured and had been torn off the femur itself. On November 16, 1994, Dr. Peña performed surgery a second time on Mr. Marze's knee. At Mr. Marze's follow-up visit on November 29, 1994, Mr. Marze seemed to be doing fine, but on December 5, 1994, part of the tissue on the tibia started turning dark and was dying. The culture taken on Mr. Marze's knee on December 5, 1994 showed that he had an E. coli bacterial infection. Dr. Peña admitted that infection following a surgery is a known and an accepted risk that physicians warn their patients about before undergoing surgery. Mr. Marze had several other surgeries performed on his knee in 1995. On May 15, 1995, there was a note in the medical records indicating that Mr. Marze told the doctor he self-aspirated his knee. Mr. Marze's knee had swollen and

he had drained it himself. Dr. Peña admitted that at this point the knee was already infected, so Mr. Marze's self-aspiration did not have much to do with the infection. Throughout 1995 and 1996, Mr. Marze continued to have problems with his knee. In January 1997, Mr. Marze had his right knee fused together at the Osteo Clinic in Galveston, and by March 1997, the knee still contained an open wound and was still infected. Dr. Peña testified that based on a reasonable probability, Mr. Marze's care from July 10, 1994 through November 22, 1997, up until the time of Mr. Marze's death, was causally related to the July 9, 1994 fall at the truck stop. According to Dr. Peña, based on reasonable medical probability, Mr. Marze's fall off of the truck scale on July 9, 1994 was the ultimate event that caused his death.

Dr. Jon Mader, an infectious disease specialist who treated Mr. Marze's infected knee, testified that a bacterial infection is a known and recognized risk of surgery and that death is one of the potential consequences of a bacterial infection following surgery. Based on a reasonable medical probability, Dr. Mader testified that there was a causal connection between the November 16, 1994 surgery and the development of Mr. Marze's infection. According to Dr. Mader, infections were causally connected to the septic shock that killed Mr. Marze. The knee infections and surgeries related directly to Mr. Marze's July 9, 1994 injury.

Dr. Jason Calhoun, an orthopedic surgeon specializing in infection surgery who treated Mr. Marze, testified that Mr. Marze's infection in his right knee was caused from the November 16, 1997 surgery. There was nothing in Mr. Marze's records or history that indicated he had a knee infection prior to the MRI taken on September 8, 1994. Dr. Calhoun testified that Mr. Marze's fall on July 9, 1994

caused the need for surgery. According to Dr. Calhoun, 2% to 3% of patients who have knee surgery can receive an infection. Of those who receive an infection, 20% of those patients have continued problems with infections. As a result, Dr. Calhoun attested that death was a potential risk from ACL orthopedic surgery.

Viewing the evidence in the light most favorable to the Marzes, and using every reasonable inference deducible in their favor, we find that the evidence was legally sufficient to support the jury's verdict. Specifically, the evidence showed: (1) that the condition of the truck scale and the location of the intercom posed an unreasonable risk of harm; (2) that Star Enterprise had actual or constructive knowledge of that unreasonable risk; and (3) that Star Enterprise's negligence proximately caused Mr. Marze's injury and subsequent death. In addition, the evidence shows a causal link between Mr. Marze's knee injury on July 9, 1994 and his death on November 22, 1997; namely, Mr. Marze injured his knee; his injured knee required surgery, the surgery caused an infection, and the infection resulted in Mr. Marze's death. Accordingly, Star Enterprise failed to demonstrate on appeal that there was no evidence to support the jury's finding.

■ In addition, we find that the evidence was factually sufficient for the jury to find that Star Enterprise proximately caused the injury and subsequent death of Mr. Marze. Although Johnston testified that the scale and the location of the intercom did not pose an unreasonable risk of injury to individuals that would be using that scale, the testimonies of Chappell, Weaver, and Tullos showed that the scales and the location of intercom did pose an unreasonable risk of injury to individuals using that scale. The jury, as the trier of fact, judges the credibility of the witnesses, assigns the weight to be given their testimony, and resolves any conflicts or inconsistencies in the testimony. *See Gunn Buick, Inc. v. Rosano*, 907 S.W.2d 628, 630 (Tex.App.—San Antonio 1995, no writ). Because the jury resolved any conflicts in the expert testimony regarding the safety of the scale, we find that the evidence was factually sufficient to support the jury's verdict. In considering, weighing, and examining all of the evidence which is contrary to the jury's determination, we do not find the weight of the evidence to be wrong or unjust. Because the evidence was legally and factually sufficient to support the jury's finding, we overrule this issue.

Having overruled Star Enterprise's issues on appeal, we affirm the judgment of the trial court.