

# Fourth Court of Appeals
## San Antonio, Texas

### OPINION

No. 04-19-00236-CV

**IN THE MATTER OF THE MARRIAGE OF** Charles Inness **THRASH**,
an Incapacitated Adult

From the Probate Court No. 1, Bexar County, Texas
Trial Court No. 2017-PC-2912-A
Honorable Oscar J. Kazen, Judge Presiding

Opinion by:     Patricia O. Alvarez, Justice

Sitting:        Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Beth Watkins, Justice

Delivered and Filed: April 29, 2020

MOTION TO STAY DENIED AS MOOT; AFFIRMED

In a guardianship proceeding, the trial court found Charles Inness Thrash lacked the capacity to care for himself, contract, or marry, and it appointed guardians of his estate and person. Without the trial court's or guardians' knowledge or consent, Thrash married Laura Martinez. In an ancillary proceeding to the guardianship case, Thrash's guardians petitioned the court to annul the marriage, which it did. Laura, and her daughter Brittany, appeal the annulment order, move this court to stay proceedings below pending disposition of this appeal, and argue the trial court abused its discretion in annulling the marriage. We dismiss Brittany's appeal for want of jurisdiction, deny the motion to stay as moot, and affirm the trial court's order.

## BACKGROUND

The great majority of the facts underlying this case are set forth in our December 4, 2019 opinion disposing of the guardianship appeal.[1] We repeat only a few of those facts here, and we recite additional facts pertinent to this appeal of the annulment order.

In the guardianship case in Bexar County, on January 29, 2019, the trial court ruled on competing motions for new trial. It again determined that Thrash was "totally without capacity to care for himself, . . . to contract, and to marry." It appointed Mary C. Werner as guardian of Thrash's person and Tonya M. Barina as guardian of Thrash's estate. On February 2, 2019, Laura and Thrash obtained a marriage license from DeWitt County—without advising the court or the guardians. On March 4, 2019, Laura and Thrash were married in a ceremony in DeWitt County.

One week later, in the ancillary proceeding underlying this appeal, Werner, as guardian of Thrash's person, joined by Barina, as guardian of Thrash's estate, petitioned to annul the marriage. After a hearing, the trial court granted the petition and annulled the marriage.

Laura and Brittany appeal the trial court's order. In three issues, they argue that the trial court abused its discretion by (1) annulling the marriage without an evidentiary hearing, (2) rendering an order not supported by legally or factually sufficient evidence, and (3) denying Thrash due process and equal protection by failing to appoint Thrash a guardian ad litem in the annulment proceeding. Laura and Brittany also moved this court to stay the proceedings in the trial court until this appeal is resolved.

Before we address the issues or the motion to stay, we first determine whether Brittany has standing to appeal.

---

[1] *In re Guardianship of Thrash*, No. 04-19-00104-CV, 2019 WL 6499225 (Tex. App.—San Antonio Dec. 4, 2019, pet. denied) (mem. op.).

## BRITTANY'S STANDING

In their brief, the guardians argue Brittany lacks standing in this appeal because she was not a party to the annulment proceeding and she did not otherwise intervene.

### A.  Standing

"Subject matter jurisdiction is an issue that may be raised for the first time on appeal . . . ." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993); *accord Caroll v. Caroll*, 304 S.W.3d 366, 367 (Tex. 2010).  "[A]ppellate standing is typically afforded 'only to parties of record,' *Gunn v. Cavanaugh*, 391 S.W.2d 723, 724–725 (Tex. 1965)[, and] an appeal filed by an improper party must be dismissed." *State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015). We review the question of standing de novo.  *See id.*; *Estate of Matthews III*, 510 S.W.3d 106, 113 (Tex. App.—San Antonio 2016, pet. denied).

### B.  Discussion

Brittany argues she "should have standing . . . as a person interested in [Thrash]" under Rule 173.2, *see* TEX. R. CIV. P. 173.2, but she does not show that she made that argument to the trial court, *contra* TEX. R. APP. P. 33.1(a); *Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 587 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Larsen v. FDIC/Manager Fund*, 835 S.W.2d 66, 74 (Tex. 1992)).  The record shows that Brittany was not named in the petition for annulment, she did not file an answer, she did not intervene, and at the hearing on the petition, she did not appear or participate.

Brittany does not point us to any part of the record that shows she was a party in the underlying annulment proceeding, and "a party may not intervene post-judgment unless the trial court first sets aside the judgment," *Naylor*, 466 S.W.3d at 788.  The trial court has not set aside its judgment, and we necessarily conclude Brittany lacks appellate standing in this appeal.  *See id.* We dismiss Brittany's appeal for want of jurisdiction.

We turn now to Laura's challenges to the trial court's order granting the petition to annul the marriage.

**PETITION TO ANNUL THE MARRIAGE**

**A.      Annulment for Mental Incapacity**

The Family Code allows a guardian to petition the court to annul the marriage of a ward.

> (a) The court may grant an annulment of a marriage to a party to the marriage on the suit of the party or the party's guardian or next friend, if the court finds it to be in the party's best interest to be represented by a guardian or next friend, if:
>
>> (1) at the time of the marriage the petitioner did not have the mental capacity to consent to marriage or to understand the nature of the marriage ceremony because of a mental disease or defect; and
>>
>> (2) since the marriage ceremony, the petitioner has not voluntarily cohabited with the other party during a period when the petitioner possessed the mental capacity to recognize the marriage relationship.

TEX. FAM. CODE ANN. § 6.108(a).

Under the statute, the trial court has discretion to grant or deny an annulment. *See id.* ("The court *may* grant an annulment [under certain conditions]." (emphasis added)). The trial court is the factfinder. *Id.* (authorizing the trial court to find facts: "if the court finds"); *cf. Desta v. Anyaoha*, 371 S.W.3d 596, 599 (Tex. App.—Dallas 2012, no pet.) (citing TEX. FAM. CODE ANN. § 6.107) (recognizing, for another annulment statute, that the trial court is the factfinder). As the factfinder, the trial court becomes "the sole judge[] of the credibility of the witnesses and the weight to give their testimony." *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005); *accord Desta*, 371 S.W.3d at 599.

**B.      Standards of Review**

We review the trial court's order granting a petition for annulment for an abuse of discretion. *Cf. Kingery v. Hintz*, 124 S.W.3d 875, 879 (Tex. App.—Houston [14th Dist.] 2003, no pet.). "Under an abuse of discretion standard, challenges to the legal and factual sufficiency of the

- 4 -

evidence are not independent grounds of error; rather, they are simply factors in assessing whether the trial court abused its discretion." *Gardner v. Gardner*, 229 S.W.3d 747, 751 (Tex. App.—San Antonio 2007, no pet.); *accord Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied).

"Because of the overlap between the abuse-of-discretion and sufficiency-of-the-evidence standards of review, this court engages in a two-pronged inquiry to determine whether the trial court (1) had sufficient information on which to exercise its discretion and (2) erred in its application of that discretion." *Day v. Day*, 452 S.W.3d 430, 433 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *accord Gardner*, 229 S.W.3d at 751. For the first prong, we use traditional legal and factual sufficiency standards. *Day*, 452 S.W.3d at 433; *Gardner*, 229 S.W.3d at 751.

*1.     Legal Sufficiency*

"When a party attacks the legal sufficiency of an adverse finding on an issue on which it did not have the burden of proof, it must demonstrate on appeal that no evidence supports the adverse finding." *Graham Cent. Station, Inc. v. Peña*, 442 S.W.3d 261, 263 (Tex. 2014) (per curiam) (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983)). We review the evidence in the light most favorable to the verdict, "credit[ing] favorable evidence if reasonable jurors could, and disregard[ing] contrary evidence unless reasonable jurors could not." *City of Keller*, 168 S.W.3d at 822, 827; *accord Graham Cent. Station*, 442 S.W.3d at 263.

But for a bench trial, the court is "the sole judge[] of the credibility of the witnesses and the weight to give their testimony," and "[i]t is the province of the [factfinder] to resolve conflicts in the evidence." *City of Keller*, 168 S.W.3d at 819–20. "If the evidence at trial would enable reasonable and fair-minded people to differ in their conclusions, then [the factfinder] must be allowed to do so," and we may not substitute our judgment for that of the factfinder's. *Id.* at 822.

*2.*      *Factual Sufficiency*

When a party attacks the factual sufficiency of the evidence pertaining to a finding on which the party did not have the burden of proof, the party must "demonstrate there is insufficient evidence to support the adverse finding." *Flying J Inc. v. Meda, Inc.*, 373 S.W.3d 680, 690–91 (Tex. App.—San Antonio 2012, no pet.) (citing *Croucher*, 660 S.W.2d at 58). We consider all the evidence, but we will not reverse the judgment unless "'the evidence which supports the [factfinder's] finding is so weak as to [make the finding] clearly wrong and manifestly unjust.'" *Id.* (quoting *Star Enter. v. Marze*, 61 S.W.3d 449, 462 (Tex. App.—San Antonio 2001, pet. denied)); *see Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

For the second prong, we determine "whether the trial court acted without reference to any guiding rules or principles; in other words, whether the [decision] was arbitrary or unreasonable." *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam); *see Gardner*, 229 S.W.3d at 751.

## NO EVIDENTIARY HEARING

In her first issue, Laura argues the trial court abused its discretion by ruling on the guardians' petition to annul the marriage because it did not hold an evidentiary hearing before rendering its decision.

## A.      Error Preservation

The guardians contend Laura waived her evidentiary hearing argument, but the record indicates otherwise. After the trial court granted the guardians' petition and annulled the marriage, Laura objected "to not being allowed to produce evidence at a final hearing." The trial court explained why it disagreed and reiterated that the annulment order was final. We conclude Laura preserved her complaint for appeal. *See* TEX. R. APP. P. 33.1(a); *Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 164, 166 (Tex. 2018) (per curiam); *In re Z.L.T.*, 124 S.W.3d 163, 165 (Tex. 2003).

**B.      Construing the Statute**

But on appeal, Laura does not cite any statute, rule, or case law that the trial court allegedly violated by ruling on the petition based on the evidence in the record.  We note that Family Code section 6.108 controls, we construe it de novo, *see Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam), and we note its plain language gives the trial court discretion to grant an annulment of a marriage if it finds certain conditions, *see* TEX. FAM. CODE ANN. § 6.108; *Kerckhoff v. Kerckhoff*, 805 S.W.2d 937, 939 (Tex. App.—San Antonio 1991, no writ) (citing an earlier version of the statute).

The annulment statute's plain language does not require the trial court to hold an evidentiary hearing before it grants an annulment.  *See* TEX. FAM. CODE ANN. § 6.108; *cf. Lippincott*, 462 S.W.3d at 509 ("The plain language of the statute imposes no requirement that the form of the communication be public.  Had the Legislature intended to limit the Act to publicly communicated speech, it could have easily added language to that effect.").

And as Laura points out, the trial court's order expressly states it considered all the "pleadings on file in [the annulment] cause and in the underlying guardianship proceeding, including all exhibits thereto [and the] testimony and other evidence submitted in the guardianship proceeding."  Laura is free to challenge the sufficiency of the evidence supporting the trial court's order—which she has.  *Cf. Desta v. Anyaoha*, 371 S.W.3d 596, 598 (Tex. App.—Dallas 2012, no pet.) (sufficiency challenges in annulment).  But there is no statutory requirement to hold an evidentiary hearing before granting an annulment, and the statute gives the trial court discretion to grant an annulment.  *See* TEX. FAM. CODE ANN. § 6.108; *cf. Lippincott*, 462 S.W.3d at 509.

Based on this record and the issue as presented, we cannot conclude that the trial court abused its discretion in granting an annulment without holding an evidentiary hearing.  *See Worford*, 801 S.W.2d at 109; *Desta*, 371 S.W.3d at 598.  We overrule Laura's first issue.

**LEGAL, FACTUAL SUFFICIENCY CHALLENGES**

In her second issue, Laura argues the trial court's March 21, 2019 order annulling the marriage was not supported by legally or factually sufficient evidence. To grant an annulment, the trial court had to find evidence supporting the statute's essential elements, *see* TEX. FAM. CODE ANN. § 6.108, and we review the evidence of each using the applicable standards of review.

## A. No Capacity at Time of Marriage

For the first element, the guardians had to establish that "at the time of the marriage [Thrash] did not have the mental capacity to consent to marriage or to understand the nature of the marriage ceremony because of a mental disease or defect." *See* TEX. FAM. CODE ANN. § 6.108(a)(1); *Kerckhoff*, 805 S.W.2d at 939 (citing an earlier version of the statute).

Laura asserts she and Thrash exchanged vows in a ceremonial marriage on March 4, 2019. Before that date, in the guardianship case, the trial court signed orders on November 15, 2018, and January 29, 2019, regarding Thrash's capacity. In each guardianship case order, the trial court determined that Thrash was "totally without capacity to care for himself, , . . . to contract, and to marry," and each order expressly states "the Ward shall not retain the right to marry."

Laura admits she understood the January 29, 2019 order was final before the ceremonial marriage took place, but she insists the trial court's finding of incapacity was merely a rebuttable presumption. *See In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014). Yet she does not identify any evidence or authority to show that she overcame that presumption, such as that the finding had been withdrawn or otherwise successfully challenged, before the date of the ceremonial marriage. *See, e.g.*, TEX. EST. CODE ANN. § 1202.051 (allowing "a ward or any person interested in the ward's welfare [to] file a written application with the court for an order . . . finding that the ward is no longer an incapacitated person and ordering the settlement and closing of the guardianship"); *In re Guardianship of Pers. & Estate of Tonner*, 513 S.W.3d 496, 499 (Tex. 2016) (per curiam).

*But see* TEX. EST. CODE ANN. § 1202.055 (prohibiting, generally, a person from applying to modify "a ward's guardianship before the first anniversary of the date of the hearing on the last preceding application").

Laura does not argue, the guardians deny, and we have found no evidence that, the guardians consented to Thrash's marriage. We conclude that the evidence that "at the time of the marriage [Thrash] did not have the mental capacity to consent to marriage or to understand the nature of the marriage ceremony because of a mental disease or defect" is both legally and factually sufficient. *See* TEX. FAM. CODE ANN. § 6.108(a)(1) (capacity to marry); *City of Keller*, 168 S.W.3d at 827 (legal sufficiency); *Flying J*, 373 S.W.3d at 690–91 (factual sufficiency).

### B.     No Capacity to Recognize Marriage

For the second element, the guardians had to establish that "since the marriage ceremony, [Thrash] has not voluntarily cohabited with [Laura] during a period when [Thrash] possessed the mental capacity to recognize the marriage relationship." *See* TEX. FAM. CODE ANN. § 6.108(a)(2); *Kerckhoff*, 805 S.W.2d at 939. The guardians assert neither Thrash, Laura, nor any other interested person has applied to terminate the guardianship since the date of the marriage, and Thrash's incapacity remains in legal effect based on the trial court's January 29, 2019 order.[2]

Again, Laura does not point us to any authority to show that, by order of a competent court, Thrash's capacity to marry was reinstated, *see, e.g.*, TEX. EST. CODE ANN. § 1202.051(a)(1), and he voluntarily cohabited with Laura such that he was able to recognize the marriage relationship, *see* TEX. FAM. CODE ANN. § 6.108(a)(2). Further, Laura does not assert, and there is no evidence that, Thrash obtained permission from his guardians to recognize the ceremonial marriage.

---

[2] In *In re Guardianship of Thrash*, No. 04-19-00104-CV, 2019 WL 6499225 (Tex. App.—San Antonio Dec. 4, 2019, pet. denied) (mem. op.), we rejected Laura's challenge to Thrash's guardianship and affirmed the trial court's guardianship order.

We conclude that the evidence showing that "since the marriage ceremony, [Thrash] has not voluntarily cohabited with [Laura] during a period when [Thrash] possessed the mental capacity to recognize the marriage relationship" is legally and factually sufficient. *See* TEX. FAM. CODE ANN. § 6.108(a)(2) (capacity to recognize marriage); *City of Keller*, 168 S.W.3d at 827 (legal sufficiency); *Flying J*, 373 S.W.3d at 690–91 (factual sufficiency).

Having determined the evidence for each essential element of the annulment statute was legally and factually sufficient, we conclude the evidence supports the trial court's order to annul the marriage.

## C.      Common-Law Marriage

As a subpart of her sufficiency argument, Laura argues for the first time on appeal that she and Thrash had a common-law marriage that predated the trial court's November 15, 2018 and January 29, 2019 orders, and the trial court had no authority to annul and set aside their common-law marriage.

### 1.      Laura's Arguments

Laura argues the evidence shows that she and Thrash were married by common law because they proved each element. *See* TEX. FAM. CODE ANN. § 2.401 (elements of informal marriage); *Russell v. Russell*, 865 S.W.2d 929, 931 (Tex. 1993) (citing a previous version). She argues it was the guardian's burden to show her common-law marriage was voidable because the common-law marriage "issue was raised in the trial court."

### 2.      Guardians' Arguments

The guardians insist Laura did not raise the common-law marriage issue to the trial court in the annulment hearing, and she cannot raise the issue for the first time on appeal.

*3.      Discussion*

One week after Laura and Thrash exchanged vows in a ceremonial marriage, the guardians filed an original petition to annul the marriage.  The cause was filed in the trial court with exclusive jurisdiction, and it was given a separate cause number: 2017-PC-2912-A.

At the beginning of the hearing on the guardians' petition to annul the marriage, the trial court called for announcements in the annulment proceeding and noted that party status in the guardianship proceeding did not, of itself, confer party status on anyone in the annulment proceeding.  The trial court recapped the relevant portions of the guardianship proceedings and then repeatedly stated that the parties "are not here on the guardianship itself."  The trial court emphasized that "we're about to begin this hearing as it relates to the marriage, which is an ancillary action. . . .  We're not here for any of those [guardianship] issues, despite all the motions."  The trial court reiterated that "it is very clear we are not talking about the guardianship in this hearing today."  The guardians began presenting their case by noting that the proceeding was for 2017-PC-2912-A, an ancillary but separate cause from the guardianship proceeding.

In their petition and arguments to annul the marriage, the guardians specifically and expressly challenged "the validity of the marriage."  To defend the validity of the marriage, Laura had the opportunity—and the burden—to raise any relevant arguments to defend the marriage.

In Laura's March 14, 2019 original answer to the guardian's petition, Laura did not argue she and Thrash had already established a common-law marriage or otherwise raise a preexisting common-law marriage defense.  At the hearing on the annulment petition, Laura argued grounds to support the validity of her ceremonial marriage, but she said nothing to raise a common-law

marriage defensive theory. On appeal, Laura does not point to any part of the record to show she raised a common-law marriage issue to defend against an annulment, and we have found none.[3]

We necessarily conclude Laura failed to raise a common-law argument to the trial court in the annulment proceeding, and "absent fundamental error, [we have] no discretion to reverse an otherwise error-free judgment based on a new argument raised for the first time on appeal." *See Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 587 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (citing *Larsen v. FDIC/Manager Fund*, 835 S.W.2d 66, 74 (Tex. 1992)).

Given the evidence was legally and factually sufficient to support the trial court's findings, and Laura failed to raise her common-law marriage defense argument to the trial court, we cannot conclude the trial court abused its discretion in ordering the marriage annulled. *See Worford*, 801 S.W.2d at 109; *Gardner*, 229 S.W.3d at 751.

We overrule Laura's second issue.

### DUE PROCESS, EQUAL PROTECTION RIGHTS

In her third issue, Laura argues the trial court denied Thrash his due process and equal protection rights because it did not appoint a guardian ad litem for him as required by Estates Code section 1203.051(b). *See* TEX. EST. CODE ANN. § 1203.051 (removing a guardian). The guardians respond that section 1203.051(b) does not apply to an annulment proceeding and the trial court had no obligation to appoint a guardian ad litem. *See id.*; *In re Webster*, No. 05-15-00945-CV, 2015 WL 4722306, at *1 (Tex. App.—Dallas Aug. 10, 2015, orig. proceeding) (mem. op.).

---

[3] In her answer, Laura quoted from a letter from Dr. Manuel Naron, M.D., which she attached to her answer, regarding Thrash's mental capacity. But she did not quote from, cite, or include in any argument Dr. Naron's comment referring to Laura as Thrash's "common-law wife." Similarly, in Laura's other pleadings incorporated by reference, Laura refers to herself and Thrash as "life partners," with a "long-standing romantic and professional relationship," but none of her pleadings address the elements of an informal marriage or assert that she and Thrash were husband and wife based on an informal marriage.

As we noted above, the guardians' original petition for annulment created an ancillary but separate proceeding from the guardianship proceeding. The trial court made it clear that the annulment hearing was not about the guardianship and the court would not hear issues pertaining to the guardianship. The record shows beyond dispute that the annulment proceeding was not a proceeding to decide whether to remove either of Thrash's guardians. *See* TEX. EST. CODE ANN. § 1203.051(a)(6), (7) (stating grounds for removal requiring appointment of a guardian ad litem); *In re Webster*, 2015 WL 4722306, at \*1. Section 1203.051(b)'s requirement to appoint a guardian ad litem did not apply in the annulment proceeding, and the trial court did not violate Thrash's due process or equal protection rights as alleged.

We overrule Laura's third issue.

### MOTION TO STAY

In her brief, Laura moved this court to stay proceedings in the trial court and to grant remedial relief "to ameliorate harm that [Thrash] and Laura have suffered due to past statutory violations." Having overruled each of Laura's issues, we deny Laura's motion as moot.

### CONCLUSION

Despite Laura's arguments to the contrary, the trial court was not required to hold an evidentiary hearing before it decided the guardians' petition to annul the marriage, the evidence supporting the two essential elements to annul the marriage on the ground of mental incapacity was both legally and factually sufficient, and the trial court did not deprive Thrash of his due process or equal protection rights. We dismiss Brittany's appeal for want of jurisdiction, deny the motion to stay as moot, and affirm the trial court's order.

Patricia O. Alvarez, Justice