Wayne WELCH and Wanda
Welch, Appellants,

v.

Delbert G. McDOUGAL, d/b/a Horizon
Properties and Hunters Way, a
Partnership, Appellees.

No. 07–93–0107–CV.

Court of Appeals of Texas,
Amarillo.

May 12, 1994.

Rehearing Denied June 13, 1994.

Holman Hogan, L.L.P. Kevin Dubose, Carl V. Crow, Houston, for appellant.

**220** ■ 

Crenshaw, Dupree & Milam, Cecil Kuhne and William J. Wade, Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Appellants Wayne Welch and Wanda Welch bring this appeal from a take-nothing summary judgment in favor of Delbert McDougal (McDougal), d/b/a Horizon Properties (Horizon),[1] and Hunters Way, a general partnership. The Welches brought suit against McDougal and the Hunters Way partnership, of which McDougal is a partner, for personal injuries sustained by Wayne Welch while working for a subcontractor hired by Horizon to make repairs on property owned by Hunters Way. The suit also included a cause of action for damages suffered by Wanda Welch as a consequence of Wayne Welch's injuries.

Hunters Way is the name of an apartment complex owned by the Hunters Way partnership. McDougal is the majority owner and managing partner of the Hunters Way partnership.[2] He also owns and operates Horizon as a sole proprietorship. Horizon was created for the purpose of performing repair and construction work on property owned by the various partnerships in which McDougal had interests. David Miller is employed as the general manager of Horizon.

On November 9, 1990, the Hunters Way partnership, acting through McDougal, hired Horizon, as a general contractor, to perform repair work on the Hunters Way apartment complex. This agreement was embodied in a standard form contract. David Miller, as general manager for Horizon, orally subcontracted with David Welch, d/b/a Triple D Masonry, to repair the brickwork on several chimneys at the apartment complex. David Welch employed his father, appellant Wayne Welch, to work on the chimneys at the Hunters Way Apartments.

While Wayne Welch was working on the chimneys at the apartments, the scaffolding on which he was standing fell. Wayne was seriously injured as a result. Wayne and his wife originally brought suit only against Horizon for their injuries, however, they later amended their petition to include the Hunters Way partnership as a defendant. On February 27, 1992, Horizon brought a third-party action against David Welch for indemnification or contribution.

On October 28, 1992, Horizon filed a motion for summary judgment premised on the theory that, as the general contractor without control over the details of the subcontractor's work, it was not liable for injury to an employee of the subcontractor. On the same day, the Hunters Way partnership filed a summary judgment motion asserting (1) that a premise owner or occupier is not liable to employees of an independent contractor, (2) that although it was not negligent in hiring Horizon, even if it had been negligent, Wayne Welch was employed by David Welch, d/b/a Triple D Masonry, whose independent contractor status precluded liability on the part of Hunters Way, and (3) inasmuch as no joint venture existed between itself and Horizon, it could not be jointly and severally liable with Horizon. On January 27, 1993, the trial court granted both motions thus giving rise to this appeal.[3]

■ Although the jurisdiction of this court to hear the appeal is not challenged by the parties, we are obligated to determine, sua sponte, our jurisdiction to hear the appeal. *New York Underwriters Ins. Co. v. Sanchez,* 799 S.W.2d 677, 678 (Tex.1990); *Bethurum v. Holland,* 771 S.W.2d 719, 722 (Tex.App.—Amarillo 1989, no writ). In examining the record, we note that, although the caption on the trial court's judgment reflects the existence of the third-party action brought by McDougal against David Welch, it does not make any express disposition of that action. Additionally, we also note that appellants' appeal bond names only

---

1. References to Horizon refer to McDougal in his role as proprietor of Horizon Properties.

2. The remaining partners in the Hunters Way partnership are Alan R. Grassano, C. Robert Holt III, and Charles E. Hartman.

3. A second judgment, correcting a misspelling in the original judgment, was filed February 8, 1993.

McDougal as appellee and contains no reference to the Hunters Way partnership. For this court to have jurisdiction of this appeal, the judgment giving rise to the appeal must be a final one and the appeal bond must comply with statutory requirements.

■ In order to be final and appealable, a summary judgment must dispose of all parties and issues before the court. *Mafrige v. Ross,* 866 S.W.2d 590, 591 (Tex.1993). Unlike an entry of judgment after a conventional trial on the merits, the entry of a summary judgment raises no presumption that the court disposed of all parties and issues. *Chase Manhattan Bank, N.A. v. Lindsay,* 787 S.W.2d 51, 53 (Tex.1990); *Teer v. Duddlesten,* 664 S.W.2d 702, 704 (Tex.1984). Therefore, to dispose of all parties and issues, the trial court must either carefully draft its judgment to conform to the pleadings, or it must include a general statement in the judgment denying all relief not otherwise specifically granted, commonly known as a Mother Hubbard clause, or include a statement with language equivalent to such a clause. *Mafrige v. Ross,* 866 S.W.2d at 592; *North East Independent School Dist. v. Aldridge,* 400 S.W.2d 893, 898 (Tex.1966).

■ That being true, we must determine if the trial court's judgment in this case disposed of McDougal's third-party action against David Welch, thereby making the judgment final and appealable. McDougal's third-party petition against David Welch sought indemnification or, in the alternative, contribution "in the event that Plaintiffs should recover judgment" against McDougal. Inasmuch as McDougal's third-party action was entirely dependent on the recovery of a judgment against him, the trial court's summary judgment in favor of McDougal, of necessity, also disposed of his third-party action. Thus, the summary judgment is final and appealable.

We must next determine whether appellants have properly perfected this appeal as to each of the appellees. Appellants' appeal bond contains the correct trial court cause number, however, it recites the style of the case as "Wayne Welch and Wanda Welch (Plaintiff) v. Delbert G. McDougal (Defendant)," without reference to the Hunters Way partnership.

■ In several older cases, Texas courts have held that omission of a party as an obligee under an appeal bond fails to perfect the appeal as to the omitted party. *Alamo Express, Inc. v. International Brotherhood of Teamsters,* 215 S.W.2d 936, 937 (Tex.Civ. App.—San Antonio 1948, no writ); *Miller v. Dunagan,* 123 S.W.2d 363, 364 (Tex.Civ. App.—El Paso 1938, writ dism'd); *Anderson v. Automobile Fin. Co.,* 260 S.W. 1092, 1093 (Tex.Civ.App.—Galveston 1924, no writ). However, the opinions in *Miller* and *Anderson* reveal that the bonds involved in those cases were payable to named appellees.[4]

In the recent case of *Vail v. First Gibraltar Bank,* 859 S.W.2d 425 (Tex.App.—Dallas 1993, no writ), the court noted the earlier cases yet held that in an appeal involving a cash deposit filed with the district clerk, the omission of an appellee's name from the clerk's certificate does not fail to perfect appeal as to the omitted party. The court explained that this is so because the appeal was perfected by the deposit with the clerk and the depositing party does not designate to whom the money can be paid. *Id.* at 426. In *Conann Constructors, Inc. v. Muller,* 618 S.W.2d 564 (Tex.Civ.App.—Austin 1981, writ ref'd n.r.e.), the Austin Court of Appeals held that the inadvertent failure to name a party in an appeal bond made payable to the district clerk also did not fail to perfect the appeal as to that party. *Id.* at 569.

Parenthetically, although the *Vail* court commented that the *Conann* decision was in "irreconcilable conflict with the earlier authorities," we disagree. In a case involving an appeal bond, the identity of the obligee named in the bond provides the distinction. When an appeal bond made payable to named appellees inadvertently omits a certain appellee, that party will be unable to recover on the bond and, consequently, is unprotected by that bond. However, where

---

4. The opinion in *Alamo* does not reveal who the named obligees on the bond were, but does show that one of the parties was not named as an obligee.

a bond is payable to the district clerk, as is allowed by Rule 46(a) of the Texas Rules of Appellate Procedure, the rationale of the *Conann* court is applicable and, as a result, all appellees receive the protection of the appeal bond.

Here, as in *Conann,* the appeal bond is payable to the clerk of the district court. Finding that appellants have properly perfected this appeal, we will now consider appellants' points of error. In that consideration, we must bear in mind the standards for appellate review of summary judgment articulated in *Nixon v. Mr. Property Management Company,* 690 S.W.2d 546 (Tex. 1985). Those standards are:

1. The movant has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue, evidence favorable to the non-movant will be taken as true;

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Id.* at 549.

■ In their first point, appellants assert that a material question of fact exists concerning whether Horizon retained a right of control over the work of its subcontractor, Triple D Masonry.[5] It is the rule that a general contractor who has control of a construction site is charged with the same responsibility as an owner or occupier. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 417 (Tex.1985). The failure to fulfill this responsibility can result in the general contractor being found liable for premise defects or activities or instrumentalities on the premises. *Id.* While we find no evidence in the record that Horizon was in control of the premises, for the purposes of summary judg-

ment review we will indulge in the presumption that it was.[6] As an exception to the general rule imposing a duty to exercise care, an owner or occupier, including a general contractor in control of the premises, has no duty to protect the employees of an independent subcontractor from danger arising out of that subcontractor's activities. *Id.* at 418; *Abalos v. Oil Development Co.,* 544 S.W.2d 627, 631 (Tex.1976).

■ There is, however, a further exception that imposes a duty on a general contractor who retains some control over a subcontractor's work. In such an instance, the general contractor must exercise reasonable care in supervising the subcontractor's activity. That rule, embodied in section 414 of the Restatement of Torts, was adopted by our supreme court in *Redinger.*[7] As it is the right of control, rather than the actual exercise of that right, that gives rise to this duty, the exception applies whether or not the right is exercised. *Pollard v. Missouri Pacific R.R.,* 759 S.W.2d 670, 671 (Tex.1988).

■ Texas cases interpreting this rule demonstrate two ways in which the necessary retention of control is established. First, if there is evidence that the general contractor (or employer) explicitly retained control in the contract with the subcontractor (or contractor), or second, if the general contractor actually exercised control over the work of the subcontractor (or independent contractor). Examples of the first situation include *Pollard v. Missouri Pacific R.R.,* 759 S.W.2d at 671 (written contract gave employer control over access and storage of materials); *Tovar v. Amarillo Oil Co.,* 692 S.W.2d 469, 470 (Tex.1985) (written contract gave owner the right to take possession of well and discontinue drilling on the basis of carelessness, inattention or incompetency on the

---

5. In addressing appellants' points of error, we note that appellants' brief fails to comply with Texas Rule of Appellate Procedure 74(b) in that the table of contents and index of authorities contain no page references.

6. When reviewing the granting of summary judgment, such presumptions are required to be made in favor of a non-movant. *Nixon v. Mr. Property Management Co., supra.*

7. Section 414 of the Restatement provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for the physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts (1977) § 414.

part of the contractor); and *Lawson–Avila Const., Inc. v. Stoutamire,* 791 S.W.2d 584, 589 (Tex.App.—San Antonio 1990, writ denied) (written contract made general contractor responsible for all construction techniques and procedures). Examples of retention of control shown by an actual exercise of control include *Enserch Corp. v. Parker,* 794 S.W.2d 2, 6 (Tex.1990) (employer provided procedure manual for contractor's employees), and *Pena v. TXO Production Corp.,* 828 S.W.2d 188, 190 (Tex.App.—Corpus Christi 1992, no writ) (general contractor's employee gave "step by step" instructions to subcontractor).

In their first point, appellants argue that the summary judgment evidence before the court showed the existence of a fact question as to whether Horizon retained the necessary degree of control to establish a duty on its part. Appellants argue that deposition testimony of both McDougal and David Miller support that proposition. Appellants do not contend that Horizon or the Hunters Way partnership *exercised* actual control over the work of Triple D Masonry.[8] That being so, we must examine the contract between Triple D Masonry and Horizon to determine if a right to control was *retained.*

■ The deposition testimony of McDougal and David Miller, as characterized by appellants, may be summarized in the following way: (1) Horizon was the general contractor, (2) Miller was in charge of construction for Horizon, (3) Horizon was charging the Hunters Way partnership for overseeing the project, (4) Miller was authorized to ensure that the subcontractor's work was done properly, (5) Miller was expected to remedy hazards to the subcontractor's employees if he became aware of them, (6) Miller was authorized to order that the work be stopped if it was being done in an unsafe manner, and (7) Miller was authorized to fire a subcontractor for unsafe practices. Parenthetically, although we must accept the evidence favorable to the non-movant as true, *Nixon,* 690 S.W.2d at 548–49, we are not bound by the non-movant's characterization of that evidence. We will address each of these items individually.

■ Horizon's status as a general contractor and the fact that Miller was in charge of construction for Horizon are not probative on the question of the degree of control retained by Horizon in its contract with Triple D Masonry. Rather, these factors, taken together with the fact that Triple D Masonry was a subcontractor, merely implicate the rule that the general contractor is not liable for injury to a subcontractor's employee when that injury arises out of the activities of the subcontractor. *Redinger,* 689 S.W.2d at 418; *Abalos,* 544 S.W.2d at 631. For similar reasons, the third item listed above is not probative on the question of control.

■ The general contractor's authority to ensure that a subcontractor's work is performed properly has been explicitly excluded from the types of control that might impose liability. Citing comment c to section 414 of the Restatement, the *Redinger* court held that, in order to impose liability on the general contractor (or employer), the reserved power must be more than a general right to order the work to start or stop, to inspect progress, or to receive reports. *Redinger,* 689 S.W.2d at 418. Thus, to impose liability, the control retained by a general contractor must relate to the *manner* in which the work is performed rather than the quality of the result. *Cf. Enserch Corp. v. Parker,* 794 S.W.2d at 6; *Pena v. TXO Production Corp.,* 828 S.W.2d at 190; *Lawson–Avila Const., Inc. v. Stoutamire,* 791 S.W.2d at 589. Implicit in that characterization is the recognition that the power to order that work be stopped necessarily includes the right to fire the subcontractor without imposing liability on the general contractor.

■ In his deposition, McDougal testified that he would expect Miller to attempt to remedy a dangerous situation of which he was aware, even if the only risk was to the employees of a subcontractor. This statement, preceded by very specific testimony that Miller was not expected to oversee the

---

**8.** In fact, at least nine of the specific acts of negligence alleged in appellants' petition are based on a failure to exercise control.

safety programs or practices of subcontractors, reflects nothing more than McDougal's expectation that Miller exercise common human decency. That expectation, without more, is not sufficient to demonstrate a retention of control sufficient to impose liability upon Horizon. We do not believe that a general contractor or an employer is required to stand idly by while another is injured or killed in order to avoid liability. Nor do we believe that the liability rules contemplate putting those who employ independent contractors in that position. We do not agree that McDougal's deposition testimony raises a fact question concerning retention of control. Accordingly, appellants' first point is overruled.

In their second point, appellants assign error to the trial court's summary judgment in favor of the Hunters Way partnership. Appellants present the same argument under this point as that contained in the first point but also seek to impose liability on Hunters Way based on McDougal's joint roles as owner of Horizon and managing partner of Hunters Way. Our discussion under appellants' first point applies with equal effect to appellants' arguments under this point. The second point is overruled.

In their third point, appellants, contending that they alleged fourteen separate theories of recovery, argue that summary judgment was improper because appellees' motions for summary judgment failed to address each cause of action. An examination of paragraph III of appellants' third amended original petition, its active pleading, reveals that appellants list fourteen "acts or omissions on the part of DELBERT MCDOUGAL and HORIZON PROPERTIES which constituted negligence." Subparagraphs 1 through 5 detail alleged failures to comply with duties imposed by the Occupational Safety and Health Act of 1970 (OSHA). Subparagraphs 6 through 10 detail alleged failures to comply with duties imposed by the General Conditions of the Contract for Construction AIA document A201, 1976 Edition. Subparagraphs 11 through 13 allege violations of duties imposed upon a general contractor on

a construction site. Subparagraph 14 alleges a failure to provide appellant Wayne Welch a safe place to work in violation of a federal statute, 29 U.S.C. 651 et seq.

Several of these items allege violations of the contract between the Hunters Way partnership and Horizon. Parenthetically, the inclusion of claims of contract violations in a list of acts or omissions constituting negligence presents some ambiguity as to the theory asserted in these items. However, the listing of specific acts to which appellants assign negligence are related to the ultimate question of whether they are entitled to recovery.

■ It is now axiomatic that for a defendant to be entitled to summary judgment, he must disprove, as a matter of law, at least one of the essential elements of each of the plaintiffs' causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex. 1991). The essential elements of a negligence cause of action are: the existence of a duty owed by one party to another, a breach of that duty, and damages which were proximately caused by the breach of that duty. *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987). As we have above noted, appellees' motions for summary judgment were premised on the argument that Horizon and Hunters Way owed no duty of care to appellants because Triple D Masonry was an independent contractor. The absence of a duty defeats a cause of action for negligence. *Graff v. Beard*, 858 S.W.2d 918, 919 (Tex. 1993).

■ Determining the propriety of the summary judgment as to appellants' negligence claims with regard to the AIA contract[9] requires an examination of the written documents at issue. The two documents at issue include two standard forms from the American Institute of Architects: AIA document A101 (1977 edition), entitled Standard Form Agreement Between Owner and Contractor (A101 form), and AIA document A201

---

9. Whether this theory seeks damages for breach of contract or somehow seeks to use the contract

as the basis for a negligence claim is irrelevant to our disposition.

(1976 edition), entitled General Conditions of the Contract for Construction (A201 form).

The A101 form is the document that was executed between the Hunters Way partnership and Horizon concerning the repair work at the Hunters Way Apartments. It contains the names of the parties, a description of the work to be performed,[10] and the contract price. This form is signed by McDougal, as managing partner for Hunters Way, and David Miller, as general manager for Horizon. The A201 form, which was not attached to the A101 form, is a nineteen page document that specifies various rights and obligations of owners, architects, contractors, and subcontractors in a construction contract. It is the provisions of this form, specifically sections 4.3, 4.7.2, 4.7.4, 4.9, 10.1 and 10.2, that appellants contend Horizon violated.

Appellants argue that the A201 form, though not executed by the parties or attached to the A101 contract, was incorporated by reference to the A101 contract between Hunters Way and Horizon. In support of this argument, appellants first point to a line in the heading of the A101 form that states, "Use only with the 1976 Edition of AIA Document A201, General Conditions of the Contract for Construction." This provision appears in the heading of the A101 document and not in the body. It can only be read as precatory language cautioning users not to use the form with another set of general conditions. It is not sufficiently definite to constitute an incorporation by reference.

This is particularly true in view of the provisions of Articles 1 and 7 of the A101 form. Article 1 is entitled "The Contract Documents" and states, in full:

The Contract Documents Consist of this Agreement, the Conditions of the Contract (General, Supplementary and other Conditions), the Drawings, the Specifications, all Addenda issued prior to and all Modifications issued after execution of this Agreement. These form the Contract, and all are as fully a part of the Contract as if attached to this Agreement or repeated

herein. An enumeration of the Contract Documents appears in Article 7.

In Article 7 of the A101 form, the following provision and parenthetical instructions are set forth:

7.2 The Contract Documents, which constitute the entire agreement between the Owner and the Contractor, are listed in Article 1 and, except for Modifications issued after execution of this Agreement, are enumerated as follows: (List below the Agreement, the conditions of the Contract (General, Supplementary, and other Conditions), the Drawings, the Specifications, and any Addenda and accepted alternates, showing page or sheet numbers in all cases and dates where applicable).

Here, this section of the form was left blank by the parties to the agreement. The omission of any reference to the A201 form supports appellees' contention that the provisions of that form were not made part of the work agreement between the appellees. Thus, as the summary judgment record does not show that the form was part of the contract between the appellees, appellants could not recover under that theory, regardless of their allegations concerning violations of conditions set forth in the A201 form. The trial court's grant of a summary judgment on the A201 claims was proper.

As we noted above, however, appellants also allege negligence per se in their active pleading, citing violations of several regulations made pursuant to the Occupational Health and Safety Act. 29 U.S.C. §§ 651–678. Appellants contend that appellees did not specifically negate the negligence per se claims in their motions and, as a result, failed to comply with the procedural rules necessary for a summary judgment. Appellants argue that the summary judgment must be reversed for this reason also.

■ Summary judgment proceedings are governed by Rule 166a of the Texas Rules of Civil Procedure. Subsection (c) of that rule requires that "the motion for summary judg-

---

**10.** This description contains only two provisions:

**1.** Repair of exterior trim on all buildings.

**226**

ment[ ] state the specific grounds therefor."[11] Appellees answer appellants' contention by pointing to another provision of that section which provides that "[i]ssues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."[12] Appellees contend that appellants waived any right to reversal on a "lack of specificity" ground because they did not allege that appellees failed to negate their negligence per se theory in their response to appellees' motions for summary judgment. We disagree.

In *Fisher v. Capp*, 597 S.W.2d 393 (Tex. Civ.App.—Amarillo 1980, writ ref'd n.r.e.), we had occasion to analyze the rule applicable in these situations. In that case we explained:

> If the non-movant wishes to contend on appeal that summary judgment was improperly granted, and does not file a written response to the motion for summary judgment,[13] the only issue before the appellate court is whether the grounds expressly presented to the trial court by the movant's motion are insufficient as a matter of law to support summary judgment.

*Id.* at 397. Applying this rule to the present case, in view of appellees' failure to negate appellants' negligence per se claims, the summary judgment against those claims was improper. To that extent, and to that extent only, appellants' third point is granted. Regarding the challenge to the remainder of the judgment, the point is overruled.

Accordingly, the summary judgment being overbroad, it is reversed insofar as it purports to render judgment for appellees on appellants' allegations contained in subparagraphs 1–5 and 14 of paragraph III of the Third Amended Original Petition. That portion of the cause is remanded to the trial

court. The remainder of the judgment of the trial court is affirmed.

---

2. Paint exterior of all buildings.

11. Tex.R.Civ.P. 166a(c). *See also City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

12. Tex.R.Civ.P. 166a(c).

13. The same situation is presented where, as here, a response is filed that fails to address an issue that the non-movant argues on appeal will defeat the summary judgment.