Cindy **HAGINS,** Individually and as Representative of the Estate of Roger Hagins, and as Next Friend of Sarah Hagins and Dylan Hagins, Appellants

v.

**E–Z MART STORES, INC.,** et al., Appellees.

No. 06–03–00040–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 22, 2004.

Decided Feb. 6, 2004.

Laureen F. Bagley, John D. Sloan Jr., Sloan, Price & Monsour, PC, Longview, for appellants.

Darrell L. Barger, David W. Green, Jeffrey S. Patterson, Hartline, Dacus, et al., Kathryn F. Green, Corpus Christi, for appellees.

Before MORRISS, C.J., ROSS and CORNELIUS,* JJ.

## OPINION

MORRISS, Chief Justice.

While Roger Hagins was working for a construction contractor building a new E–Z Mart convenience store, he accidentally stepped off a platform suspended approximately nine feet off the ground, causing his fatal fall. Alleging negligence for failing to exercise reasonable care to reduce or eliminate unsafe work conditions, Hagins' estate subsequently sued E–Z Mart Stores, Inc., and Hagins' employer, Doug R. Lance, individually and d/b/a Lance Construction Co.[1] The jury found both

---

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment

1. Cindy Hagins, Roger Hagins' wife, sued E–Z Mart and Lance in her individual capacity, as representative of her late husband's estate, and as next friend of Dylan and Sarah Hagins. These interests are collectively referred to as Hagins' estate.

defendants and Hagins negligent and assessed sixty percent of proportionate responsibility to Hagins himself, thirty percent to Lance, and ten percent to E–Z Mart. The trial court's resulting final judgment ordered Lance to pay a total of $57,634.67, including interest, and decreed that Hagins' estate take nothing against E–Z Mart.

On appeal, Hagins' estate contends the trial court erred by submitting two questions to the jury (one because it was defective, the other because it improperly instructed the jury) and in refusing to submit a requested question. Hagins' estate also argues that the jury's answers to two questions were against the great weight and preponderance of the evidence and that the trial court erroneously granted E–Z Mart's motion for summary judgment on the issue of negligence in hiring. We affirm.

*Jury Question One: E–Z Mart's Control*

In its first and second points of error, Hagins' estate contends jury question one was defective because it improperly commented on the evidence and inadequately stated the law; instead, its own, more detailed, question should have been submitted by the trial court. As presented to the jury, question one asked: "Did E–Z Mart Stores, Inc. control fall protection on the job in question?" In its place, Hagins' estate would have had the question read: "Did E–Z Mart Stores, Inc. exercise or retain some control over the manner in which the work was performed, other than the right to order the work to start or stop or to inspect progress or receive reports?"

■ In presenting a jury charge, a trial court must submit those questions, instructions, and definitions raised by the written pleadings and the evidence, properly enabling the jury to render a verdict. Tex. R. Civ. P. 277, 278. "The goal of the charge is to submit to the jury the issues for decision logically, simply, clearly, fairly, correctly, and completely." *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 664 (Tex.1999). As long as the charge is legally correct, trial courts are afforded broad discretion, *id.*, subject to reversal only on a court's abuse of that discretion, *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). Therefore, when reviewing a complaint of error in a question submitted to a jury, appellate courts must determine whether a trial court acted arbitrarily, unreasonably, or without reference to any guiding principles. *Goode v. Shoukfeh*, 943 S.W.2d 441, 446 (Tex.1997).

■ Even if an appellate court concludes a lower court abused its discretion, however, reversal is appropriate only where the jury charge error is shown to be harmful. *Star Enter. v. Marze*, 61 S.W.3d 449, 456 (Tex.App.—San Antonio 2001, pet. denied) (citing *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 749–50 (Tex. 1980)). That is, after considering the pleadings, the evidence, and the charge in its entirety, *Dallas County Sheriff's Dep't v. Gilley*, 114 S.W.3d 689, 691 (Tex.App.— Dallas 2003, no pet.); *Kiefer v. Cont'l Airlines, Inc.*, 10 S.W.3d 34, 37 (Tex.App.— Houston [14th Dist.] 1999, pet. denied), "[e]rror in the jury charge is reversible only if it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case on appeal," *Marze*, 61 S.W.3d at 456 (citing Tex. R. App. P. 44.1(a); *Timberwalk Apts. v. Cain*, 972 S.W.2d 749, 756 (Tex.1998)). In other words, we must determine whether there is an error in the jury charge and, if so, determine whether it was harmful. *Marze*, 61 S.W.3d at 456.

In support of its requested question, Hagins' estate cites *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778 (Tex.2001),

and *Dow Chem. Co. v. Bright,* 89 S.W.3d 602 (Tex.2002). In *Harrison,* the Texas Supreme Court stated that, although a general contractor does not ordinarily "owe a duty to ensure that an independent contractor performs its work in a safe manner ... [a] duty does arise ... if the general contractor retains some control over the manner in which the independent contractor performs its work." *Harrison,* 70 S.W.3d at 783 (citations omitted). In *Bright,* the court went on to say that "[f]or liability to attach, 'the employer's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports.'" *Bright,* 89 S.W.3d at 606 (quoting *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985)).

Hagins' estate argues that these cases suggest the issue of retained control should not be limited to fall protection in this case; instead, they support broadening the issue to encompass any exercise of supervisory control by E–Z Mart over Lance. Stated another way, Hagins' estate contends the jury should not have been limited to determining whether E–Z Mart retained control over fall protection, but should also have been permitted to consider E–Z Mart's alleged control over other areas of work, including its alleged failure to stop repeated violations of federal safety standards[2] and to properly coordinate the order of work among its various subcontractors. This interpretation of *Harrison* and *Bright,* however, unnecessarily expands and misapplies the exception to the general rule that "an owner or occupier of land does not owe any duty to ensure that an independent contractor performs his work in a safe manner."

*Hoechst–Celanese Corp. v. Mendez,* 967 S.W.2d 354, 356 (Tex.1998).

The standard for determining whether a premises owner retained supervisory control is a narrow one, *Coastal Marine Serv. of Tex., Inc. v. Lawrence,* 988 S.W.2d 223, 225—26 (Tex.1999), proved in two ways: "first, by evidence of a contractual agreement that explicitly assigns the premises owner a right to control; and second, in the absence of a contractual agreement, by evidence that the premises owner actually exercised control over the manner in which the independent contractor's work was performed," *Bright,* 89 S.W.3d at 606. Because no contractual agreement exists between the parties, we concern ourselves only with whether E–Z Mart actually exercised control over the manner in which Lance performed the work. In making this determination, however, it is important to note that the retention of control must not only be more than the right to start, stop, or inspect progress, but it must also "relate to the activity that actually caused the injury." *Lawrence,* 988 S.W.2d at 226; *see Elliott–Williams Co. v. Diaz,* 9 S.W.3d 801, 804 (Tex.1999) (stating control must relate to injury the negligence causes); *Clayton W. Williams, Jr., Inc. v. Olivo,* 952 S.W.2d 523, 528 (Tex.1997) (explaining general contractor's right of control over injury-causing activity or condition is what gives rise to duty to ensure independent contractor safely performs). By broadening the issue to encompass any exercise of supervisory control by E–Z Mart over Lance, Hagins' estate would eliminate the require-

---

**2.** The reference to "Lance repeatedly and flagrantly violating federal safety regulations" appears to stem, at least in part, from a citation issued by the Occupational Safety and Health Administration. Specifically identifying the June 1999 accident involving Hagins,

OSHA cited and fined Lance for failing to "furnish employment ... free from recognized hazards that were ... likely to cause death or serious physical harm to employees." This citation, however, was not issued until September 1999.

ment that the retention of control relate to the activity that actually caused the injury.

Although the Texas Supreme Court has recognized that "a general contractor has actually exercised control ... when [it] knew of a dangerous condition before an injury occurred and approved acts that were dangerous and unsafe," *Bright*, 89 S.W.3d at 609 (citing *Harrison*, 70 S.W.3d at 784), it does not follow that this principle applies absent the requirement that E–Z Mart's alleged retention of control must still relate to the activity that led to Hagins' fall. In fact, neither *Harrison* nor *Bright* supports the conclusion Hagins' estate would have us reach. The court's analysis in both cases directly addresses the defendants' retention of control only in terms of whether that control somehow affected or related to the injuries of which the subcontractors' employees complained. The trial court required a similar showing in this case by limiting the jury's consideration of E–Z Mart's alleged retention of control to those activities that actually caused Hagins' injuries.

In *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 23 (Tex.1993), the Texas Supreme Court explained why a court's determination of actual control in negligence cases should not focus on the right to control general operations, but should, instead, focus on the right of control over the activity or condition that actually caused the injury. The specific question at issue was whether an oil company owed a duty to protect a tenant service station's employees from the criminal acts of third parties. Under the facts in that case, Exxon leased a full-service gasoline station to Jerry Morgan, who then hired Terry Tidwell as an attendant; Tidwell was later shot during a robbery attempt on the premises and suffered gunshot wounds to his face and arm. *Id.* at 20.

In its analysis, the court cited an earlier opinion expressly adopting Section 414 of the Restatement (Second) of Torts in support of the rule that "[o]ne who retains the right of control or exercises actual control over the work of an independent contractor also owes a duty of reasonable care to the contractor's employees." *Id.* at 21 (citing *Redinger*, 689 S.W.2d at 418; RESTATEMENT (SECOND) OF TORTS § 414 (1965)). The court, however, limited the application of this principle when it stated:

> [T]he nature of the matters to which the right of control extends [is] determinative. We think that in a case alleging negligence in maintaining a safe workplace, the court's inquiry must focus on who had specific control over the safety and security of the premises, rather than the more general right of control over operations. Issues concerning control over operations ... obscure the true inquiry. The focus should be on whether Exxon had the right to control the alleged security defects that led to Tidwell's injury. If Exxon did not have any right to control the security of the station, it cannot have had any duty to provide the same. If Exxon had such a right of control, on the other hand, its conduct may be found to have contributed to Tidwell's injury. Applying the traditional test of right of control over general operations simply does not answer this question. It requires a factfinder to surmise a general right of control from factors unrelated to safety, and then to infer from that general control a right of control over the safety conditions that are the real issue in the case.

*Id.* at 23. This is precisely what Hagins' estate attempted to do in submitting a question encompassing any exercise of supervisory control by E–Z Mart over Lance.

■ While it is clear that Texas caselaw supports narrowing the issue of actual control to whether a general contractor retained or exercised control over the activity or condition causing the injury, *Lawrence*, 988 S.W.2d at 226, we are concerned with the rather strict narrowness of the issue presented to the jury in this case. Nevertheless, regardless of whether it was proper to ask the jury to consider the issue of E–Z Mart's control over fall protection, the jury ultimately found E–Z Mart negligent, determined its negligence proximately caused Hagins' injuries, and assessed its proportionate responsibility. Therefore, any error in the submission of question one was thereby rendered harmless. We therefore overrule points of error one and two.[3]

### Jury Question Two: E–Z Mart's Duties

■ In its third point of error, Hagins' estate contends the trial court erred in submitting question two of the jury charge because it failed to properly instruct the jury regarding E–Z Mart's duties, resulting in jury confusion and error in answering questions one and three. Hagins' estate cites no law on this point, but complains that the jury should have been provided dual instructions on negligence and ordinary care because E–Z Mart filled both the role of premises owner and general contractor. The trial court, instead, submitted only those instructions relating to E–Z Mart's role as premises owner. Because a "general contractor in control of the premises is charged with the same duty as an owner or occupier," *Olivo*, 952 S.W.2d at 527, both have the duty to use reasonable care

to make and keep the premises safe. *Id.*; *Koko Motel v. Mayo*, 91 S.W.3d 41, 45 n. 5 (Tex.App.—Amarillo 2002, pet. denied); *Redinger*, 689 S.W.2d at 417. Even if failure to submit both sets of instructions constituted charge error, in light of the jury's affirmative finding of E–Z Mart's negligence, we fail to see how any such error could have been harmful. *See Marze*, 61 S.W.3d at 456.

### Evidentiary Sufficiency

In its fourth and fifth points of error, Hagins' estate complains the jury's answers to questions one and three were against the great weight and preponderance of the evidence. In support of this position, Hagins' estate argues that the jury's answers were manifestly unjust because the evidence demonstrates that the only fault attributable to Hagins was his failure to watch where he was stepping, whereas E–Z Mart actually exercised control of the premises, knew of the unsafe platform used by Lance employees, and approved of the platform's use.

■ When a party challenges the factual sufficiency of an adverse jury finding on an issue where it had the burden of proof at trial, we review and weigh all of the evidence, both for and against the issue, setting aside the verdict only if the evidence supporting it is so weak or the finding is so contrary to the great weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex.2001); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). If it sets aside the verdict, "the court of appeals must 'detail

---

**3.** Finding no cases directly supporting the trial court's decision to limit the jury's consideration of control to "fall protection," we believe it may have been more in line with Texas Supreme Court precedent for the jury to have been asked whether E–Z Mart retained control over Lance's work safety. Nevertheless, because the circumstances of this case do not require it, we decline to adopt such a rule at this time and do not wish to be understood as either approving or disapproving an issue this narrow.

the evidence relevant to the issue' and 'state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict.'" *Francis,* 46 S.W.3d at 242 (quoting *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 630 (Tex.1986)).

 Returning to the earlier discussion of retained control and *Harrison,* Hagins' estate maintains that E–Z Mart's actual control of the premises was established by the evidence. Unlike the present case, however, the *Harrison* court concluded a general contractor actually retained the right to control fall protection because it assigned one of its employees to oversee and routinely inspect its subcontractor's employees and their proper use of fall-protection equipment. *Harrison,* 70 S.W.3d at 784. The evidence also suggested that this supervisor personally witnessed and approved of the subcontractor's use of specific fall-protection systems, despite knowing of the subcontractor's failure to comply with established safety procedures relating to their use. *Id.* In this case, the evidence shows that one of E–Z Mart's employees, Danny Harrington, signed the building permit in the capacity of general contractor and was similarly identified on job specifications, but does not suggest he maintained any of the type of control over safety that led the *Harrison* court to conclude control had actually been retained. Evidence of the potential or possibility of control is not evidence that actual control is exercised or retained. *Lawrence,* 988 S.W.2d at 226. It is simply not enough that Harrington could have stopped work if he felt someone was in jeopardy or that he could have requested a

change in procedure had he considered conditions to be blatantly unsafe.

 In order for E–Z Mart to have any duty of care under the circumstances, it must necessarily have exercised control beyond mere general or supervisory control, extending its influence over the operative detail of Lance's work to such an extent that Lance would not have been free to perform the work in its own way. *Harrison,* 70 S.W.3d at 793 (Hecht, C.J., concurring) ("[T]he right of control must ... extend to the 'operative detail' of the contractor's work ... and to the injury-producing activity itself."). The Texas Supreme Court has also said that "a general contractor or an employer is [not] required to stand idly by while another is injured or killed in order to avoid liability" and "the liability rules [do not] contemplate putting those who employ independent contractors in that position." *Mendez,* 967 S.W.2d at 358 (quoting *Welch v. McDougal,* 876 S.W.2d 218, 224 (Tex.App.—Amarillo 1994, writ denied)).

 The evidence supporting the claim that E–Z Mart retained control over the operative details of Lance's work is weak at best. Hagins' estate points out that, before the accident in question, Harrington directed a Lance employee to weld a bracket on a gas pipe and asked another to hang a door. After the accident, Harrington instructed that rails should be installed on the platform[4] and asked an employee to come down from the top of a ladder. Although these facts present some evidence of control by E–Z Mart, they certainly are not so overwhelming as to undermine the jury's conclusion that E–Z Mart did not retain control.[5]

---

4. Evidence of remedial measures taken after an accident are ordinarily inadmissible, but such evidence need not be excluded if it is offered for another legitimate purpose, such

as to show control—its purpose here. Tex. R. Evid. 407(a).

5. In light of our earlier discussion regarding the requirement that control be exercised in

In addition, it appears that the evidence supporting the jury's response to question three, apportioning sixty percent of the responsibility for the accident to Hagins himself, thirty percent to Lance, and ten percent to E–Z Mart, is more than sufficient. The determination of negligent parties' proportionate responsibility is a matter soundly within the jury's discretion, and, after the jury's finding that Hagins, Lance, and E–Z Mart were all negligent and that their negligence proximately caused Hagins' injuries, it is not the place of this Court to substitute its judgment for that of the jury, even if a different percentage of allocation could be supported by the evidence. *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 659–60 (Tex. App.—Dallas 2002, pet. denied) (explaining Section 33.033 of Texas Civil Practice and Remedies Code affords juries "wide latitude in … allocating responsibility for an accident"); *Samco Props., Inc. v. Cheatham*, 977 S.W.2d 469, 478 (Tex.App.—Houston [14th Dist.] 1998, pet. denied).

Although Hagins' estate argues E–Z Mart failed to prove Hagins was contributorily negligent, it makes this claim only tangentially and as part of its factual insufficiency point of error respecting the jury's response to question three. Not only did the safety consultation expert for Hagins' estate testify on cross-examination that Hagins was at least partially at fault, but counsel for Hagins' estate also said in closing arguments that he believed the question relating to Hagins' own negligence should be answered affirmatively, even suggesting a fifteen percent allocation of responsibility. The evidence further demonstrated that it was an unsafe work practice for Hagins to use the platform while positioned at an angle (leaving approximately three feet of open space between one side of the platform and the wall on which he was working) and that it had been Hagins' decision not to make an attempt to reposition the platform so that it would be flush against the wall.[6] In light of the fact that Hagins and his coworkers had been trained in safety practices and knew the hazards associated with working above ground without safety harnesses, it is not unreasonable to conclude, based on the evidence presented, that jurors could find Hagins himself was the person most responsible for his injuries.

*Negligent Hiring*

In its sixth point of error, Hagins' estate contends the trial court erroneously granted E–Z Mart's motion for summary judgment on the issue of negligence in hiring. That is, E–Z Mart should be liable to Hagins' estate for negligently hiring Lance despite its routine violations of regulations and use of hazardous workplace procedures, including the failure of its employees to wear safety lines when working above ground.

Under the doctrine of negligent hiring, the basis of liability "is the master's own negligence in hiring or retaining … an incompetent servant whom

relation to the injury-causing activity or condition before subjecting a general contractor to liability for harm to an independent contractor's employee, we also note that the pre-accident example of E–Z Mart's exercise of control cited by Hagins' estate is completely unrelated to work safety.

6. Preceding the accident, Hagins' coworker, Kenneth Battles, moved the forklift and platform, attempting to position it around a truck and trailer parked close to the building. Unable to position the platform so that it was flush with the wall, Battles asked Hagins if he should request that the truck and trailer be moved. Rather than ask the other subcontractors to move their equipment, however, Hagins attempted to reposition the forklift himself, still leaving the platform positioned at an angle.

the master knows, or by the exercise of reasonable care should have known, was incompetent or unfit, thereby creating an unreasonable risk of harm to others." *Wise v. Complete Staffing Servs., Inc.*, 56 S.W.3d 900, 902 (Tex.App.—Texarkana 2001, no pet.). An employer who negligently hires an incompetent or unfit individual, therefore, may be directly liable to a third party whose injury was proximately caused by the employee's negligence. *Golden Spread Council, Inc. v. Akins*, 926 S.W.2d 287, 294 (Tex.1996). Hagins, however, as an employee of the independent contractor itself, cannot be considered a third party to which E–Z Mart may have owed a duty.

■ In analyzing the scope of the phrase "third party" as used in the context of negligent hiring, the Fifth District Court of Appeals determined that it did not include the employees of independent contractors. *Rogers v. Pro–Tec Installations, Inc.*, No. 05–96–00049–CV, 1997 WL 412090, at *9, 1997 Tex.App. LEXIS 3829, at *30 (Tex.App.—Dallas July 24, 1997, no pet.) (not designated for publication). Although the court was unable to cite any cases definitively stating whether an independent contractor's employees are third parties for the purpose of considering liability in negligent hiring, it pointed out that Texas law clearly holds that an independent contractor's employee is not considered a third party in strict liability cases. *Id.* (citing *Hammack v. Conoco, Inc.*, 902 S.W.2d 127, 131 (Tex.App.—Houston [1st Dist.] 1995, writ denied); *Gray v. Baker & Taylor Drilling Co.*, 602 S.W.2d 64, 67 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.)). Seeing no reason why the phrase should be interpreted differently in relation to negligent hiring, the court ultimately held that a general contractor cannot be liable to an independent contractor's employee on the ground of negligent hiring. *Rogers*, 1997 WL 412090, at *9, 1997 Tex.App. LEXIS 3829, at *31. We agree.

*Conclusion*

Having determined (1) the trial court did not abuse its discretion in submitting questions one and two, (2) the evidence was factually sufficient to support the jury's findings, and (3) E–Z Mart's motion for summary judgment with regard to negligent hiring was appropriately granted, we affirm the judgment of the trial court.