COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-07-143-CV

ROBERT L. WILSON APPELLANT

V.

AGRI-EMPRESSA, INC. APPELLEE

------------

FROM THE 97TH DISTRICT COURT OF CLAY COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

In four issues, Appellant Robert L. Wilson (“Wilson”) asserts that the trial court erred in granting summary judgment to Agri-Empressa, Inc. (“Agri-Empressa”).  Wilson asserts in his first three issues that the trial court was mistaken in determining that Agri-Empressa had no duty to Wilson, and in his fourth issue, that the trial court was mistaken in determining that any negligence on the part of Agri-Empressa was not a proximate cause of Wilson’s injuries.  

II.  Factual and Procedural Background

On April 1, 2003, Wilson, a truck driver working for Westar  Transportation, Inc. (“Westar”)
, fell while attempting to secure a load on his trailer while on 
the premises of Agri-Empressa where his truck had been loaded.

Agri-Empressa was one of Westar’s main customers, and Wilson picked up loads there frequently.  On the day of the accident, Agri-Empressa employees loaded Wilson’s truck and used forklifts to place tarps on top of the load.  Wilson then applied straps to the load.  
After his trailer was loaded, Wilson moved his truck and trailer adjacent to wooden pallets stored at the yard so that he could use the pallets as “stairs” to climb to the top of the trailer to secure the tarps.  This was Wilson’s regular practice, and he performed the task without assistance.  At some point in the past, Agri-Empressa had used forklifts to lift Wilson onto the load so he could secure the straps and tarps.  Normally, Wilson jumped off the top of the load onto the highest pallet, which he used as a stair.  However, on the day of the accident, the pallet on which he would have jumped was about three feet square, and he was concerned that he might miss it because of its size.  He decided not to jump, but he did not call for help. Wilson decided to try to slide down holding onto a hand hold in the tarp, but he lost his grip, fell, and hit a pallet with his hip.  
He finished tarping his load and did not report the incident to Agri-Empressa, but he subsequently alleged that he was injured
.  He later sued Agri-Empressa.  In his suit,
 Wilson contended that on the day of the accident he asked Agri-Empressa for a ladder, and they failed to provide one for him because they said they did not have one tall enough.  Agri-Empressa disputed this contention.  Subsequent to this event, Agri-Empressa installed a tarping station to facilitate the loading process.  A tarping station is a series of elevated platforms for the drivers to walk upon with safety harnesses to prevent a fall.  The system has a sign requiring “all drivers” to use the tarping station.  Agri-Empressa said that “all drivers” does not mean “all drivers”; rather, the sign is intended only for drivers who are employees of Agri-Empressa.

Agri-Empressa filed a motion for summary judgment arguing that it had  fulfilled any obligations it owed to Wilson as a business invitee, that the duty to secure loads rested on Wilson, not Agri-Empressa, that Agri-Empressa did not retain any duty to Wilson regarding securing the loads, and that Agri-Empressa did not proximately cause Wilson’s fall.  The trial court granted the motion without specifying the basis therefor.  This appeal followed.

III.  Standard of Review

A.  Motion for Summary Judgment

In a summary judgment case, the issue on appeal is whether the movant met the summary judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.  
Tex. R. Civ. P.
 166a(c); 
Sw. Elec. Power Co. v. Grant, 
73 S.W.3d 211, 215 (Tex. 2002); 
City of Houston v. Clear Creek Basin Auth.
, 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant.  
Sw. Elec. Power Co., 
73 S.W.3d at 215.

When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant’s favor.
  Valence Operating Co. v. Dorsett
, 164 S.W.3d 656, 661 (Tex. 2005).
  
Evidence that favors the movant’s position will not be considered unless it is uncontroverted.  
Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.
, 391 S.W.2d 41, 47 (Tex. 1965).  But we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented.  
See Wal-Mart Stores, Inc. v. Spates
, 186 S.W.3d 566, 568 (Tex. 2006); 
City of Keller v. Wilson
, 168 S.W.3d 802, 822-24 (Tex. 2005).

The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of the movant’s cause of action or defense as a matter of law.  
Clear Creek Basin
, 589 S.W.2d at 678.

B.  Lack of Specificity

When a trial court’s order granting summary judgment does not specify the ground or grounds relied on for its ruling, summary judgment will be affirmed on appeal if any of the theories presented to the trial court and preserved for appellate review are meritorious.  
Provident Life & Accident Ins. Co. v. Knott
, 128 S.W.3d 211, 216 (Tex. 2003); 
Star-Telegram, Inc. v. Doe
, 915 S.W.2d 471, 473 (Tex. 1995).

IV. Negligence and Duty

A. Negligence

As pointed out by Agri-Empressa, it is axiomatic that to prove a negligence claim Wilson is required to prove that he was owed a duty, that the duty was breached, and that the breach proximately caused his injury.  
See Greater Houston Transp. Co. v. Phillips,
 801 S.W.2d 523, 525 (Tex. 1990).

B. Premises Liability and the Genesis of a Duty

An owner or occupier of land generally has a duty to use reasonable care to make and keep the premises safe for invitees.  
Clayton W. Williams, Jr., Inc. v. Olivo
, 952 S.W.2d 523, 527 (Tex. 1997).  In Agri-Empressa’s motion for summary judgment and in Wilson’s original petition, the parties acknowledge that Wilson was a business invitee.  Our sister court has recently summarized the duty of an owner or occupier of land under these circumstances.

The general rule is that an owner or occupier of land has a duty to use reasonable care to keep premises in a safe condition.  
Redinger v. Living, Inc.
, 689 S.W.2d 415, 417 (Tex. 1985).  This duty may subject the premises owner to direct liability for negligence in two situations:  (1) those arising from a premises defect, and (2) those arising from an activity on the premises.  
Id.; Clayton W. Williams, Jr., Inc. v. Olivo
, 952 S.W.2d 523, 527 (Tex. 1997).  Under the premises defect theory of premises liability there are two subcategories:  (1) defects existing on the premises when the independent contractor/invitee entered; and (2) defects the independent contractor created by its work activity.  
Coastal Marine Serv. of Tex., Inc. v. Lawrence
, 988 S.W.2d 223, 225 (Tex. 1999).  
Under the first subcategory, the premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions that are not open and obvious and that the owner knows or should have known exist.
  
Id.
  Only concealed hazards–dangerous in their own right and independent of action by another–that are in existence when the independent contractor enters the premises fall into this first subcategory of premises defects.  
Id.
 

Durbin v. Culberson County
, 132 S.W.3d 650, 660 (Tex. App.—El Paso 2004,  no pet.) (emphasis supplied).

C. Open and Obvious

In his second issue, Wilson argues that the trial court erred in granting summary judgment because the first subcategory, the “open and obvious” exception to the owner/occupiers’s duty, was obviated long ago in 
Parker v. Highland Park, Inc.
, 565 S.W.2d 512, 516-17 (Tex. 1978).  In that case, the court said that prior to the opinion, part of the plaintiff’s burden was to negate the “no-duty rule” when dangers are open and obvious.  The court went on to “expressly abolish the so called no-duty concept.”  
Id
.  Agri-Empressa responds that 
Parker
 changed the plaintiff’s burden of proof but did not change the defendant’s duty of care.  We agree.  In the 
Parker 
case, the court noted that as an invitee, Parker had to prove that the occupier of land had a duty to take reasonable precautions to warn or protect him from conditions of unreasonable risk or harm, that is, that the invitee had to negate the “no-duty” concept, or negate the concept that the occupier did not owe a duty to warn of open and obvious dangers.  
Id
.  An invitee has no such duty today.  Our supreme court and courts of appeals have indicated in later cases the duty of a premises owner or occupier with regard to open and obvious risks.  

“[T]he premises owner has a duty to inspect the premises and warn the independent contractor/invitee of dangerous conditions 
that are not open and obvious
 and that the owner knows or should have known exist.”  
Coastal Marine Serv. of Tex., Inc. v. Lawrence
, 988 S.W.2d 223, 225 (Tex. 1999) (emphasis supplied).  “This duty [using reasonable care to make the premises safe for the use of business invitees] includes warning invitees of known 
hidden 
dangers that present an unreasonable risk of harm.”  
Lefmark Mgmt. Co. v. Old
, 946 S.W.2d 52, 53 (Tex. 1997) (emphasis supplied).  This is common sense.  No warning should be needed for an “open and obvious” condition.  As it is undisputed that the condition presented by the pallets was “open and obvious,” we hold that the trial court correctly concluded that Agri-Empressa had no duty to warn Wilson of this condition under the first subcategory of premises liability theory as articulated in 
Durbin
.  We overruled Wilson’s second issue.

D. Control

In his first issue, Wilson argues that summary judgment was improper because a material fact question existed as to whether Agri-Empressa retained sufficient control to create a duty.  Wilson points out that under the second subcategory of a potential premises owner’s liability—when the dangerous condition arises as a result of the independent contractor’s work activity—although the premises owner normally owes no duty to the independent contractor because he has no duty to insure that an independent contractor preforms its work in a safe manner, an exception applies when the owner retains supervisory control over the work on the premises. 
 Olivo
, 952 S.W.2d 
 at 528.

However,  

in determining whether an owner has retained this right to control, the standard is narrow.  The right to control must be more than a general right to order work to stop and start or to inspect progress.  The supervisory control must relate to the activity that actually caused the injury, and grant the owner at least the power to direct the order in which work is to be done or the power to forbid it being done in an unsafe manner.

Coastal Marine Serv.
, 988 S.W.2d at 226.  The right of control can be shown contractually, of which there is no evidence here, and also by the actual exercise of control.  
Olivo,
 952 S.W.2d at 528.

It is instructive to note that in the case before this court, with regard to securing and tarping the loads, Wilson testified that it was “my responsibility,” that he was an expert in performing the task, and that “it’s not the responsibility of Agri-Empressa . . . [i]t’s my responsibility for my truck and my load.”  Further, Agri-Empressa’s president testified that Wilson, like other independent contractors, would receive help only if he asked them to.  There was no testimony that Agri-Empressa retained any control, or right of control, over Wilson as to how, when, or where the tarps were strapped down.  As noted in 
Olivo
, “[t]he rule stated in this Section [
Restatement Second of Torts
 § 414 comment b] is usually, though not exclusively, applicable when a principal contractor entrusts a part of the work to subcontractors, but himself or through a foreman superintends the entire job,” which is not the case here.  
Olivo
, 952 S.W.2d at 528.  Also, John Billings, the owner of Westar, testified as follows: 

Q.  It was not your expectation, was it, sir, that Agri-Empressa employees would take part in the tarping or securement of Mr. Wilson’s trailer on the date of this accident; is that correct? 

A.  No. 

. . . . 

Q.  And you know, do you not, sir, that Mr. Wilson did not expect Agri-Empressa to assist him in any form or fashion in securing his load; is that correct? 

A.  That is correct.  

Q.  And that would be true for all the Westar drivers at the Agri yard, correct.  

A.  Correct.

In a case very similar to the one we are considering, the United States District Court of the Southern District of Texas found that no such supervisory control existed, applying Texas law.  
Waddy v. Mobil Oil Corp
., 756 F.Supp. 1010, 1014 (S.D. Tex. 1990).  Waddy had asserted that he was injured while slipping and falling off his loaded truck when a clip broke while he was performing the tarping operation.  Mobil asserted that it did not exercise control over the tarping procedure and did not operate or maintain the trailer being tarped.  Further, Waddy testified that he was free to do the tarping in his own way and no Mobil employee witnessed or supervised the tarping procedure.  The court noted that as a premises owner Mobil had the right to assume that the independent contractor would take the necessary precautions to assure the safety of its employees, citing
 Jenkins v. Fritzler Development Corp
., 580 S.W.2d 63, 65 (Tex. Civ. App.—Houston [1st
 Dist.] 1979, writ ref’d n.r.e.).  The court went on to observe that Waddy was required to tarp his trailer both by his employer and by the law of the State of Texas.
(footnote: 2)  
Waddy
, 756 F.Supp. at 1013.  Under these circumstances, the court found that “the defendant owed no duty to provide safety racks and other safety devices to protect plaintiff while he tarped his load,” and thus granted summary judgment for Mobil. 
 Id.
 at 1014.

We agree with the district court’s analysis and hold that the requisite supervisory control purported to be exerted by Agri-Empressa was absent under these circumstances.  

E. Subsequent Remedial Measure

Wilson next argues that Agri-Empressa’s installation of a dedicated tarping station and requirement that all drivers use it was a subsequent remedial measure that implied control, citing 
Hagins v. E-Z Mart Stores, Inc.
, 128 S.W.3d 383, 391 (Tex. App.—Texarkana 2004, no pet.) (holding that a subsequent remedial measure was legally sufficient “weak at best” evidence of control over the work of an employee of an independent contractor), and 
Tyson Foods, Inc. v. Guzman
, 116 S.W.3d 233, 242 (Tex. App.—Tyler 2003, no pet.) (holding that evidence of subsequent remedial measures was admissible when control over the employee of an independent contractor was contested). Stephen Goree, president of Agri-Empressa, testified with regard to the tarping station that although there is a sign that says, “All loads must be tarped.  Driver must use the tarping station,” the sign ”only applies to our drivers.  We don’t have any control over the other drivers,” and that independent contractors are not required to use the new tarping station because “[t]hey can do what they want to do.”
(footnote: 3)  No evidence from drivers was elicited to refute this explanation.  Further, Agri-Empressa observed that the tarping station was installed before Agri-Empressa first learned of Wilson’s accident, which was at the time he filed suit.  This latter observation is, however, immaterial because control is the issue, not whether Agri-Empressa believed it was trying to correct a problem it should have previously remedied.  This goes to negligence—and is not a subject for remedial-measure-evidence admissibility.

Nevertheless, under these circumstances, we cannot say that there exists a factual or legal issue on the question of control that would preclude summary judgment.  Wilson’s first issue is overruled. 

V.  Conclusion

Having overruled Wilson’s first and second issues, we are not required to reach his third and fourth issues because they are dependent upon the existence of a fact issue as to duty.  We affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and MCCOY, JJ.

DELIVERED: February 21, 2008

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
See
 Act of May 13, 1971, 62nd Leg., R.S., ch. 363, § 1, 1971 Tex. Gen. Laws 1376, 
repealed by 
Act of Apr. 21, 1995, 74th Leg., R.S., ch. 165, §24(a), 1995 Tex. Gen. Laws 1870 (current version at 
Tex. Transp. Code Ann.
 § 75.021 (Vernon 2007)).

3:
He further testified as follows:

Q.  Mr. Goree, you don’t believe that you can tell those other drivers what to do when they’re on your property dealing with your product?

A.  No.  They’re an independent contractor.  They have to haul it down the road.  And they know what they can haul legally on their truck and how they have to secure their load by D.O.T. regulations.  And if they get pulled over and it’s not strapped correctly, they get the ticket.  It is their responsibility.